[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Prinkey v. Emerine's Towing, Inc.*, Slip Opinion No. 2024-Ohio-5713.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2024-OHIO-5713

THE STATE EX REL. PRINKEY, APPELLEE, *v.* EMERINE'S TOWING, INC.;
INDUSTRIAL COMMISSION OF OHIO, APPELLANT.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Prinkey v. Emerine's Towing, Inc.*, Slip Opinion No. 2024-Ohio-5713.]**

*Workers' compensation—R.C. 4123.58(G)—New and changed circumstances—Industrial Commission's order must state the evidence on which it relied—Judgment affirmed.*

(No. 2024-0652—Submitted September 17, 2024—Decided December 9, 2024.)

APPEAL from the Court of Appeals for Franklin County,
No. 22AP-264, 2024-Ohio-1137.

————————————

The per curiam opinion below was joined by KENNEDY, C.J., and FISCHER, DEWINE, DONNELLY, STEWART, BRUNNER, and DETERS, JJ.

**Per Curiam.**

{¶ 1} Appellant, Industrial Commission of Ohio, denied the second request of appellee, Paul Prinkey Jr., for permanent-total-disability ("PTD") compensation. Prinkey asked the Tenth District Court of Appeals for a writ of mandamus directing the commission to issue a new order finding that he is entitled to PTD compensation or, in the alternative, to return the matter to the commission for further proceedings. The Tenth District returned the matter to the commission, and the commission appealed. We affirm.

## I. BACKGROUND

{¶ 2} On January 19, 2015, Prinkey was injured while working for Emerine's Towing, Inc. His workers' compensation claim was allowed for "myocardial infarction and substantial aggravation of pre-existing coronary artery disease" and "major depressive disorder, single episode."

{¶ 3} Prinkey filed his first application for PTD compensation on February 4, 2019. He was examined by two physicians and two psychologists—two selected by Prinkey and two by the commission. Regarding Prinkey's physical condition, Prinkey's selected physician opined that he "is permanently and totally disabled from any and all sustained, gainful, and remunerative employment as a result" of his industrial injury. The commission's physician, on the other hand, opined that Prinkey had a 30 percent whole-person impairment and is "capable of sedentary work exerting up to 10-pounds of force occasionally."

{¶ 4} Prinkey's selected psychologist opined that his "psychiatric condition constitutes approximately 25 percent disability" and that he is "permanently and totally disabled from any and all forms of remunerative employment." The commission's psychologist, on the other hand, opined that Prinkey has "a 3 percent whole-person impairment" and is "capable of working."

{¶ 5} A staff hearing officer ("SHO") for the commission denied Prinkey's request for PTD compensation on January 15, 2020. The SHO relied on the reports

from the commission's specialists and found that Prinkey was medically capable of performing some sustained remunerative employment at the sedentary level. The SHO further found, based on a vocational evaluation, that Prinkey's nonmedical disability factors favored reemployment.

{¶ 6} On June 4, 2021, Prinkey filed a subsequent application for PTD compensation, documenting worsening symptoms of his allowed conditions in reports by the same medical doctor and psychologist who had supported his first application. Two new professionals had examined Prinkey at the commission's request. The opinions of the medical doctors did not deviate from the 2019 assessments of Prinkey's physical condition: Prinkey's physician maintained that Prinkey was permanently and totally disabled, while the commission's physician maintained that Prinkey was 30 percent disabled and capable of sedentary work.

{¶ 7} But the two psychologists submitted opinions with noted differences from the earlier conclusions regarding Prinkey's first application for PTD: (1) his selected psychologist increased his percentage of whole-person impairment caused by his psychological condition to 30 percent from 25 percent, again finding him permanently and totally disabled, and (2) the commission's psychologist found Prinkey "incapable of work," putting his whole-person impairment based on his psychological condition at 35 percent, up from the 3 percent set by the commission's first psychologist.

{¶ 8} While Prinkey's second request for PTD compensation was pending before the commission, the General Assembly amended R.C. 4123.58, the statute governing PTD compensation. *See* 2021 Am.Sub.H.B. No. 75 ("H.B. 75"). The amendment included the addition of paragraph (G):

> If the industrial commission has adjudicated a claimant's application for compensation payable under this section for permanent total disability and issued a final order denying

compensation for that application, the claimant shall present evidence of new and changed circumstances before the industrial commission may consider a subsequent application filed by the claimant for compensation under this section for the same injury or occupational disease identified in the previous application.

R.C. 4123.58(G). Section 8 of H.B. 75 states that this amendment applies "to claims pending on or arising on or after the effective date of this section," which was September 28, 2021.

{¶ 9} A different SHO held a hearing on Prinkey's second request for PTD compensation on November 9, 2021. The SHO found that "R.C. 4123.58(G) requires an Injured Worker to present evidence of new and changed circumstances before the [commission] may consider a subsequent application for [PTD] compensation based on the same injury . . . for which the [commission] had previously denied an application for [PTD] compensation." The SHO further found that Prinkey "failed to present evidence of new and changed circumstances" and, therefore, that the commission had "no jurisdiction to address" Prinkey's second request for PTD compensation "at this time." The commission subsequently denied Prinkey's request for reconsideration of the SHO's order.

{¶ 10} In April 2022, Prinkey filed a mandamus action in the Tenth District, seeking a writ that would direct the commission to issue a new order finding that he is entitled to PTD compensation. In the alternative, Prinkey asked the court to return the matter to the commission for further proceedings because the commission did not provide "some evidence" for refusing his PTD application. In support, Prinkey argued that the commission erred by applying R.C. 4123.58(G) retroactively and that, even if that was not error, the worsening of his mental-health condition is a new and changed circumstance that warrants consideration of his subsequent application for PTD compensation.

4

**{¶ 11}** The court referred the matter to a magistrate, who concluded that R.C. 4123.58(G) is a remedial statute and that applying the provision to Prinkey's subsequent request for PTD compensation, which was filed before and remained pending when R.C. 4123.58(G) became effective, was a retroactive application of the statute, but constitutionally allowed. 2024-Ohio-1137, ¶ 48-49, 64-67 (10th Dist.). The magistrate nevertheless recommended returning the matter to the commission because the SHO had not supported her decision with evidence and reasoning. *Id*. at ¶ 74-77.

**{¶ 12}** Prinkey did not object to the magistrate's decision. But the commission objected to the magistrate's findings that the SHO (1) applied R.C. 4123.58(G) retroactively and (2) did not adequately cite the evidence she relied on or adequately explain the reasoning for her decision. The court of appeals overruled the objections, adopted the magistrate's decision, and issued a limited writ of mandamus returning the matter to the commission for further proceedings. *Id*. at ¶ 16.

**{¶ 13}** The commission's appeal is now before us as of right. The commission raises the same issues on appeal that it argued in its objections to the magistrate's decision.

## II. ANALYSIS

### A. Legal Standards

**{¶ 14}** To be entitled to a writ of mandamus, the relator must show by clear and convincing evidence that he has a clear legal right to the requested relief, that the commission has a clear legal duty to provide that relief, and that he has no adequate remedy in the ordinary course of the law. *State ex rel. Zarbana Industries, Inc. v. Indus. Comm.*, 2021-Ohio-3669, ¶ 10. Because an order that grants or denies PTD compensation concerns the extent of a claimant's disability, it is not subject to appeal and must be challenged by a writ of mandamus. *See* R.C. 4123.512(A);

*see also State ex rel. Gen. Motors Corp. v. Indus. Comm.*, 42 Ohio St.2d 278, 281 (1975).

{¶ 15} A writ of mandamus may lie when there is a legal basis to compel the commission to perform its duties under the law or when the commission has abused its discretion in carrying out its duties. *State ex rel. Gen. Motors Corp. v. Indus. Comm.*, 2008-Ohio-1593, ¶ 9. "Where a commission order is adequately explained and based on some evidence, even evidence that may be persuasively contradicted by other evidence of record, the order will not be disturbed as manifesting an abuse of discretion." *State ex rel. Mobley v. Indus. Comm.*, 1997-Ohio-181, ¶ 16.

### B. Whether the Commission Applied R.C. 4123.58(G) Retroactively

{¶ 16} In its first proposition of law, the commission asserts that the SHO "did not apply R.C. 4123.58(G) retroactively." In this proposition of law, the commission apparently takes exception to the Tenth District's adoption of the magistrate's determination that the SHO applied R.C. 4123.58(G) retroactively but that the retroactive application was constitutionally permissible. The commission, however, was not aggrieved by the magistrate's determination because the SHO found no constitutional violation. Thus, we decline to consider the commission's first assignment of error. *See Ohio Contract Carriers Assn., Inc. v. Pub. Util. Comm.*, 140 Ohio St. 160 (1942), syllabus (appeals may be prosecuted "only to correct errors injuriously affecting the appellant").

{¶ 17} In his brief as appellee, Prinkey asserts that the Tenth District's decision that the commission's application of R.C. 4123.58(G) was remedial, and therefore constitutional, was error. This argument seeks a reversal of the Tenth District's judgment. Because Prinkey did not file a notice of cross-appeal (and S.Ct.Prac.R. 16.03(B)(1) does not allow an appellee's brief to seek reversal), we are precluded from considering Prinkey's argument. *Presley v. Norwood*, 36 Ohio St.2d 29, 34 (1973), citing *Parton v. Weilnau*, 169 Ohio St. 145, 170-171 (1959).

### C. Whether the Commission Complied with the Requirements of *Noll*

{¶ 18} In its second proposition of law, the commission asserts that the SHO "cited to some evidence to support its decision and explained the reasoning for its decision in compliance with the requirements of *State ex rel. Noll v. Indus. Comm.*, 57 Ohio St.3d 203 (1991)." Prinkey argues that the commission failed to comply with *Noll* by failing to explain how the "significant difference" between the psychologist's exam in 2019 (which found a 3 percent impairment and no work restrictions) and the psychologist's exam in 2021 (which found a 35 percent impairment and incapability of work) does not constitute evidence of new and changed circumstances.

{¶ 19} "In any order of the Industrial Commission granting or denying benefits to a claimant, the commission must specifically state what evidence has been relied upon, and briefly explain the reasoning for its decision." *Noll* at syllabus. "An order of the commission should make it readily apparent from the four corners of the decision that there is some evidence supporting it." *Id.* at 206. Failure to comply with *Noll* is an abuse of discretion. *State ex rel. Gemind v. Indus. Comm.*, 1998-Ohio-214, ¶ 10.

{¶ 20} The relevant inquiry in PTD cases is whether the claimant is physically and medically capable of any sustained remunerative employment. *State ex rel. Lawson v. Mondie Forge*, 2004-Ohio-6086, ¶ 16. If the commission finds that the claimant is capable, even if only at a sedentary level, the commission must then consider nonmedical disability factors (e.g., age, education, work history) before deciding whether the claimant is permanently and totally disabled. *State ex rel. Stephenson v. Indus. Comm.*, 31 Ohio St.3d 167, 173 (1987).

{¶ 21} When considering a subsequent application for PTD compensation, the threshold inquiry under R.C. 4123.58(G) is whether the claimant presented evidence of new and changed circumstances that developed since the initial denial of PTD compensation. R.C. 4123.58(G). The phrase "new and changed

circumstances" is not defined under the statute, but it does have application elsewhere in workers' compensation law. *See, e.g.,* R.C. 4123.57(A) (an application to increase the percentage of permanent-partial-disability ("PPD") compensation must be "supported by substantial evidence of new and changed circumstances developing since the time of the hearing on the original or last determination"); *State ex rel. Nicholls v. Indus. Comm.*, 81 Ohio St.3d 454, 459 (1998) (one prerequisite to the commission's exercise of continuing jurisdiction under R.C. 4123.52 is the presence of "new and changed circumstances").

{¶ 22} Because workers' compensation cases are largely fact-specific, what constitutes "new and changed circumstances" is determined on a case-by-case basis. For example, we have held that the finding of "new and changed circumstances" under R.C. 4123.57(A) is not improper when a medical report concludes percentage increases beyond what was reported in connection with the initial PPD determination. *State ex rel. Gen. Motors Corp., Chevrolet Motor Div. v. Indus. Comm.*, 54 Ohio St.2d 333, 335 (1978). We have also held that the worsening of an existing medical condition often serves as evidence of new and changed circumstances justifying the exercise of continuing jurisdiction to modify a previous order terminating temporary-total-disability compensation. *State ex rel. Akron Paint & Varnish, Inc. v. Gullotta*, 2012-Ohio-542, ¶ 17, citing *State ex rel. Bing v. Indus. Comm.*, 61 Ohio St.3d 424, 427 (1991).

{¶ 23} Here, in the January 2020 order denying Prinkey's first request for PTD compensation, the SHO found that Prinkey was not precluded from engaging in sustained remunerative employment at a sedentary level and that his nonmedical disability factors favored reemployment. In the November 2021 order dismissing Prinkey's second request for PTD compensation, the SHO found that Prinkey "failed to present evidence of new and changed circumstances" that would permit the commission to consider the subsequent application at that time. The SHO stated that the decision was "based on a review of the [January 2020 order] and a review

of the State['s] claim file."

{¶ 24} Because the commission has the sole responsibility to evaluate the weight and credibility of the submitted evidence, *State ex rel. Neitzelt v. Indus. Comm.*, 2020-Ohio-1453, ¶ 23, the commission is free to find that a medical report submitted with a subsequent application for PTD compensation is not credible evidence of new and changed circumstances. However, the SHO did not make this finding here. The SHO failed to provide any reasoning why the medical reports Prinkey submitted are not evidence of new and changed circumstances. Moreover, the SHO failed to cite the evidence on which it *relied* in reaching its decision, instead mentioning all the evidence it *considered*—namely, the previous SHO's order and the State's claim file. Given that the psychologists' reports in the claim file document a worsening of Prinkey's allowed conditions, the SHO could not have relied on the *entire* claim file in concluding that Prinkey failed to present *any* evidence of new and changed circumstances. Accordingly, the Tenth District correctly concluded that the SHO's order does not satisfy the requirements of *Noll*.

{¶ 25} The commission's second proposition of law lacks merit.

### III. CONCLUSION

{¶ 26} For the reasons stated herein, we affirm the judgment of the Tenth District Court of Appeals.

Judgment affirmed.

_____

Schiavoni, Schiavoni, Bush & Muldowney and Shawn R. Muldowney, for appellee.

Dave Yost, Attorney General, and Denise A. Corea, Assistant Attorney General, for appellant.

_____