**[Cite as *State ex rel. Oberdier v. Indus. Comm.*, 2025-Ohio-5234.]**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State ex rel. Michael Oberdier,      :

     Relator,      :

v.                           No. 24AP-476

                                    :

Industrial Commission of Ohio et al.,                (REGULAR CALENDAR)

                                    :

     Respondents.      :

                                      :

---

D E C I S I O N

Rendered on November 20, 2025

---

**On brief:** *Michael J. Muldoon*, for relator.

**On brief:** *Dave Yost*, Attorney General, and *Justin Marshall*, for respondent Industrial Commission of Ohio.

---

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

DORRIAN, J.

{¶ 1} Relator, Michael Oberdier, seeks a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying his second application for permanent total disability ("PTD") compensation, based on the commission's finding that Oberdier failed to demonstrate new and changed circumstances as required by R.C. 4123.58(G). For the following reasons, we grant a limited writ of mandamus.

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law, which is appended hereto. The magistrate recommends that this court grant a limited writ of mandamus.

{¶ 3} As relevant here, the magistrate concluded that by applying a different or heightened standard from that required by R.C. 4123.58(G) in evaluating whether Oberdier met his burden under the statute, the commission's staff hearing officer ("SHO") committed legal error. The magistrate concluded that for this reason alone, the matter must be remanded to the commission, as the exclusive evaluator finder of fact in workers' compensation matters, to determine in the first instance whether Oberdier has met the requirements of R.C. 4123.58(G) when it applies the correct standard. The magistrate also rejected the commission's argument that it acted within its discretion when it determined Oberdier did not present evidence of new and changed circumstances, and the magistrate concluded that the commission did not meet the requirements of *State ex rel. Noll v. Indus. Comm.*, 57 Ohio St.3d 203 (1991), and that the commission's order bore substantial similarities to the order found to be deficient in *State ex rel. Prinkey v. Emerine's Towing, Inc.*, 2024-Ohio-5713. The magistrate also rejected the commission's argument that Oberdier could not rely on the commission's own specialists because those reports were generated after Oberdier submitted his second application. The magistrate found that the plain text of R.C. 4123.58(G) only requires a claimant to " 'present evidence of new and changed circumstances **before the industrial commission *may consider*** a subsequent application' " and that the statute does not contain a temporal limitation restricting the commission to consider only the evidence presented at the time the application was filed. (Emphasis in original.) (Appended Mag.'s Decision at ¶ 56, quoting R.C. 4123.58(G).)

{¶ 4} The commission has filed the following four objections to the magistrate's decision:

> [I.] The magistrate erred when he concluded the commission used an incorrect legal standard when it determined Oberdier failed to establish new and changed circumstances as required pursuant to R.C. 4123.58(G).
>
> [II.] The magistrate erred when he recommended a limited writ because Oberdier has not established that the commission order is not based on some evidence.
>
> [III.] The magistrate erred when he equates the commission order in this case to that in [*State ex rel. Prinkey v. Emerine's Towing, Inc.*, 2024-Ohio-5713].

> [IV.] The magistrate erred when he asserted that the commission, in determining new and changed circumstances, failed to consider the reports of its own experts.

{¶ 5} To be entitled to a writ of mandamus, Oberdier must show that he has a clear legal right to the relief requested, that the commission has a clear legal duty to provide it, and that Oberdier lacks an adequate remedy in the ordinary course of the law. *State ex rel. Ryan Alternative Staffing, Inc. v. Moss*, 2021-Ohio-3539, ¶ 7, citing *State ex rel. Omni Manor, Inc. v. Indus. Comm.*, 2020-Ohio-4422, ¶ 9.

{¶ 6} The commission does not object to the magistrate's findings of fact and, therefore, finding no error evident on the face of such findings, we adopt them as our own.

{¶ 7} We begin by addressing the first and second objections together as they are dispositive. We overrule the commission's first objection that the magistrate erred in concluding that the commission applied an incorrect legal standard. The commission's SHO found that Oberdier failed to present " 'sufficient evidence of meaningful or substantial new and changed circumstances which would warrant readdressing [Oberdier's] request for permanent and total disability compensation at this time.' " (Emphasis omitted.) (Appended Mag.'s Decision at ¶ 48, quoting Am. Stip. at 3.) The magistrate found that the plain text of R.C. 4123.58(G) only requires that a claimant "present evidence of new and changed circumstances before the industrial commission may consider a subsequent application for permanent total disability compensation. . . . The statute does not require that the evidence presented be meaningful or substantial. By requiring Oberdier to present evidence meeting this different and seemingly heightened burden, the staff hearing officer effectively added language to the statute. However, neither a court nor the commission may add words when construing a statute." (Emphasis omitted.) (Internal quotations deleted and citations omitted.) (Appended Mag.'s Decision at ¶ 48.) The commission argues that the magistrate erred because the SHO order mentions "meaningful and substantial" just once and that it was not central to the core analysis. We agree with the magistrate's analysis and conclusion, based on a plain reading of R.C. 4123.58(G), that the commission applied an incorrect legal standard when she denied Oberdier's second application for PTD compensation pursuant to R.C. 4123.58(G) based on new and changed circumstances. Such application of an incorrect legal standard by the commission's SHO constitutes an abuse of discretion. *State ex rel. Perry v. Indus. Comm.*,

2007-Ohio-4687, ¶ 17 (10th Dist.). The SHO was under a clear legal duty to apply the correct legal standard, and Oberdier has no plain and adequate remedy at law. Therefore, we overrule the commission's first objection and find that Oberdier has satisfied the jurisdictional prerequisites for issuance of a writ of mandamus.

{¶ 8} We also overrule the commission's second objection that the magistrate erred in concluding that the commission's order was not based on some evidence. Having found that the SHO applied an incorrect legal standard, the magistrate found that the matter "must be remanded to the commission for it to make findings regarding R.C. 4123.58(G) under the proper legal standard." (Appended Mag.'s Decision at ¶ 50.) However, the commission encourages this court to find that some evidence supported the commission's denial of Oberdier's second application. This court cannot make such a finding. It is the duty of the commission to weigh the evidence based on the correct legal standard. Therefore, because the commission failed to apply the correct standard, this action must be remanded to the commission so that it can weigh the relevant evidence in light of the correct standard. *Mercado v. Chromalloy Am. Corp.*, 1990 Ohio App. LEXIS 4116, *6-7 (10th Dist. Sept. 20, 1990).

{¶ 9} As the magistrate points out, "[b]y applying a different or heightened standard from that required by R.C. 4123.58(G) in evaluating whether Oberdier met his burden under the statute, the staff hearing officer committed legal error . . . *[f]or this reason alone*, this matter must be remanded to the commission for it to make findings regarding R.C. 4123.58(G) under the proper legal standard." (Emphasis added.) (Appended Mag.'s Decision at ¶ 50.) We agree and conclude that our resolution of the commission's first two objections renders moot the third and fourth objections. On remand to the commission for its application of the correct legal standard and consideration and weighing of the evidence before it pursuant to that standard, the commission shall issue a new order compliant with *Noll*, 57 Ohio St.3d 203. To further consider the third and fourth objections to the magistrate's order now before this court, based on its review of the SHO's May 21, 2024 order, would require us to render an advisory opinion. *VanMeter v. VanMeter*, 2004-Ohio-3390, ¶ 5 (10th Dist.) ("[a]n appellate court is not required to render an advisory opinion on a moot question").

{¶ 10}   On review of the magistrate's decision, an independent review of the record, and due consideration of the commission's objections, we find the magistrate has properly determined the pertinent facts and applied the appropriate law as relevant to the first and second objections. We therefore overrule the commission's first and second objections to the magistrate's decision.  We adopt the findings of fact in the magistrate's decision as our own.  We also adopt the conclusions of law in the magistrate's decision as relevant to the first and second objections.  We determine to be moot the commission's third and fourth objections.  Accordingly, a limited writ of mandamus is hereby granted, returning this matter to the commission for further proceedings in accordance with law and consistent with this decision.

*Objections overruled in part and moot in part;*
*limited writ of mandamus granted.*

JAMISON, P.J., and LELAND, J., concur.

## APPENDIX

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Michael Oberdier, | : | |
| Relator, | : | |
| v. | | No. 24AP-476 |
| | : | |
| Industrial Commission of Ohio et al., | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |
| | : | |

M A G I S T R A T E ' S   D E C I S I O N

Rendered on June 5, 2025

*Michael J. Muldoon*, for relator.

*Dave Yost,* Attorney General, and *Justin Marshall,* for respondent Industrial Commission of Ohio.

IN MANDAMUS

{¶ 11} On two different occasions, first in 2020 and again in 2023, relator Michael Oberdier applied for permanent total disability compensation. Respondent Industrial Commission of Ohio ("commission") denied Oberdier's first request, finding Oberdier was able to engage in entry-level sedentary work based on two reports from specialists selected by the commission. The commission denied Oberdier's second request on the basis that Oberdier failed to demonstrate new and changed circumstances as required by R.C. 4123.58(G). Oberdier now seeks a writ of mandamus ordering the commission to vacate its order denying the second application for permanent total disability compensation. For the following reasons, the magistrate recommends granting a limited writ of mandamus.

**I. Findings of Fact**

{¶ 12} 1. Over the course of his employment history, Oberdier has had multiple workers' compensation claims allowed for various physical and psychological conditions.

{¶ 13} 2. On December 6, 1989, in the course of and arising out of his employment with respondent United Facilities, Inc., Oberdier suffered an injury to his neck when he was lifting a heavy box. Oberdier's workers' compensation claim for this incident ("the 1989 claim") was allowed for the conditions of cervical and dorsal strain, cervical radiculopathy, aggravation of preexisting degenerative changes in the cervical spine, and chronic disc disease C6-7.

{¶ 14} 3. On April 22, 2013, in the course of and arising out of his employment with respondent Sika Corporation, Oberdier suffered an injury when he was carrying brass cube molds, tripped on a floor mat, turned his upper body to put molds on a counter, and fell to the floor. Oberdier's workers' compensation claim for this incident ("the 2013 claim") was allowed for sprain lumbosacral; other intervertebral disc displacement, lumbar region L2-L3; and major depressive disorder, single episode, unspecified.

{¶ 15} 4. On March 16, 2016, in the course of and arising out of his employment with Sika Corporation, Oberdier suffered an injury when he was carrying a heavy bag and felt a severe pain in his lower back and right leg. Oberdier's workers' compensation claim for this incident ("the 2016 claim") was allowed for sprain of ligaments of lumbar spine, initial encounter.

{¶ 16} 5. Oberdier last worked on June 7, 2016.

{¶ 17} 6. Oberdier last received temporary total disability compensation on September 1, 2020, when he was found to be at maximum medical improvement for the psychological condition allowed in the 2013 claim.

{¶ 18} 7. Oberdier first sought permanent total disability compensation in an application signed on December 7, 2020. Oberdier's application was supported by the December 10, 2020 report of Michael G. Drown, Ph.D., who served as Oberdier's treating psychologist. Dr. Drown found that Oberdier's work-related psychiatric condition in addition to his physical conditions rendered him permanently and totally disabled.

{¶ 19} 8. Following his application, the commission referred Oberdier to multiple examinations with specialists selected by the commission.

{¶ 20} 9. At the request of the commission, Jennifer Stoeckel, Ph.D., conducted a clinical interview with mental status examination of Oberdier on March 8, 2021. Dr. Stoeckel found in a mental/behavioral examination report to the commission that Oberdier had a 25 percent whole person impairment based on the allowed psychological condition. Dr. Stoeckel concluded Oberdier "would be capable of low stress work that did not require more than superficial interaction with the general public or direct supervision." (Stip. at 86.) Dr. Stoeckel found Oberdier had "sufficient concentration/focus for simple to moderately complex work tasks," would be able to "maintain low levels of productivity," and was "capable of independent decision making." *Id.* However, Dr. Stoeckel noted Oberdier "would have difficulty . . . with high demands for productivity and multitasking." *Id.*

{¶ 21} 10. Andrew Freeman, M.D., examined Oberdier on April 7, 2021 and produced a musculoskeletal specialist report for the commission. Addressing the physical conditions in Oberdier's claims, Dr. Freeman found Oberdier had reached maximum medical improvement and had a 21 percent whole person impairment. Based only on the physical impairments allowed in the claims, Dr. Freeman found Oberdier was capable of sedentary work with the following additional restrictions: "[Oberdier] must be able to stand, as desired, up to 5 minutes per hour and no overhead reaching and Mr. Oberdier must be able to work with his neck in neutral position (with only minimal flexion / extension / turning / tilting)." (Stip. at 78.) Dr. Freeman found these additional restrictions would "still allow sedentary work" and were "largely consistent with [Oberdier's] self-reported levels of current and previous activities." *Id.*

{¶ 22} 11. Meleesa A. Hunt, Ph.D., conducted a vocational assessment of Oberdier on May 17, 2021. Considering Oberdier's age, education, work history, psychological condition as allowed in the claim, and other social factors, Dr. Hunt found Oberdier was "permanently and totally disabled in the vocational realm due to limitations imposed by his industrial injuries." (Stip. at 69.) Dr. Hunt found Oberdier was "incapable of performing any type of sustained, remunerative employment" and was "not a feasible candidate for vocational rehabilitation services." *Id.*

{¶ 23} 12. A commission staff hearing officer conducted a hearing on Oberdier's first application for permanent total disability on June 23, 2021. In an order mailed on July 2,

2021, the staff hearing officer denied the application. Relying on the report of Dr. Freeman, the staff hearing officer found the physical conditions allowed in the claim prevented Oberdier from returning to work at his former positions of employment, but found he was capable of engaging in sustained remunerative employment in sedentary work activities within the physical restrictions noted in Dr. Freeman's report. Based on the report by Dr. Stoeckel, the staff hearing officer found Oberdier's psychological conditions required "only minor adjustments to work activity as the impact from the symptoms from [Oberdier's] psychological conditions still allow [Oberdier] to complete moderately complex work, maintain low levels of production, and engage in independent decision making." (Stip. at 60.) Following findings from the commission's specialists, the staff hearing officer concluded that Oberdier was "physically capable of engaging in sustained remunerative employment in a sedentary capacity as noted above." *Id.*

{¶ 24} Having found Oberdier capable of sedentary employment, the staff hearing officer addressed the nonmedical disability factors. As Oberdier was 66 years of age at that time, the staff hearing officer found that Oberdier's age was a negative vocational factor in the claim. The staff hearing officer found Oberdier's past educational level and work experience to be positive factors for returning to the workforce. The staff hearing officer found Oberdier had received Social Security disability benefits from January 2015 until September 2020 and was at that time receiving Social Security retirement benefits. The staff hearing officer found these benefits were a disincentive for Oberdier to make a meaningful attempt to return to work. Therefore, based on Oberdier's age, education, work experience, and medical conditions currently allowed in the claim, the staff hearing officer found Oberdier would be able to engage in entry-level sedentary employment activity and, as a result, was not permanently and totally disabled.

{¶ 25} 13. On November 9, 2021, a commission district hearing officer issued an order granting an application filed by Oberdier for permanent partial disability in the 2013 claim. Based on three medical reports issued after the July 2, 2021 order denying permanent total disability compensation, the hearing officer found Oberdier had a permanent partial disability of 37 percent.

{¶ 26} 14. On May 27, 2022, a district hearing officer issued an order finding Oberdier's percentage of permanent partial disability in the 1989 claim had increased to 26

percent, an increase of two percent. The staff hearing officer stated that the order was based on two new medical reports, which were also issued after the July 2, 2021 order denying permanent partial disability.

{¶ 27} 15. On July 14, 2022, a staff hearing officer issued an order affirming the May 27, 2022 district hearing officer order.

{¶ 28} 16. On August 1, 2023, a district hearing officer issued an order finding Oberdier's percentage of permanent partial disability in the 2013 claim had increased to 43 percent, an increase of 6 percent. The hearing officer stated that the order was based on two medical reports issued after those referenced in the November 9, 2021 order.      17. Oberdier sought permanent total disability compensation for a second time in an application signed by Oberdier on September 18, 2023. In support of this second application, Oberdier provided a report from Dr. Drown dated September 14, 2023. In the report, Dr. Drown again found Oberdier's work-related psychiatric condition in addition to his physical conditions rendered him permanently and totally disabled.

{¶ 29} 18. For purposes of evaluating the second application for permanent total disability, the commission referred Oberdier for another series of examinations which were conducted by different specialists from those in the first application process.

{¶ 30} 19. At the request of the commission, Oberdier was examined by Stephen W. Halmi, Psy.D., on November 22, 2023. Following the examination, Dr. Halmi produced a 17-page mental and behavioral health specialist report and completed an occupational activity assessment. In the detailed report, Dr. Halmi found Oberdier's allowed psychological condition was "severe and debilitating." (Stip. at 40.) Dr. Halmi found Oberdier had a whole person impairment of 29 percent due to the allowed psychological condition.

{¶ 31} Dr. Halmi stated that Oberdier's "reduced frustration tolerance, diminished ability to concentrate, and lack of initiative and motivation preclude him from working in even a low stress position." *Id.* Furthermore, Dr. Halmi found manifestations of Oberdier's psychological condition would (1) "interfere with his ability to work effectively in a team environment and with the general public," (2) "negatively affect his productivity, even in the completion of a simple, repetitive task," and (3) "preclude him from making complex decisions." *Id.* Dr. Halmi also opined that Oberdier's concentration problems would "likely"

cause Oberdier to "make several mistakes, which would result in the need for constant supervision." *Id.* As a result, Dr. Halmi found within a reasonable degree of psychological certainty that Oberdier was "permanently and totally impaired from employment as a result of his allowed psychological condition." *Id.* Consistent with this, Dr. Halmi indicated on the occupational activity assessment form that Oberdier was incapable of work.

{¶ 32} 20. On November 28, 2023, Martin Fritzhand, M.D., conducted an independent medical evaluation of Oberdier at the request of the commission with regard to the allowed physical conditions in the 1989 and 2013 claims. In a report issued on the same date, Dr. Fritzhand noted that Oberdier received several steroid injections, including a series of three cervical epidural steroid injections which were completed by August 24, 2022, followed by L3-4 and L4-5 epidural steroid injections in 2023. Dr. Fritzhand found Oberdier was at maximum medical improvement and had sustained a whole person impairment of 29 percent based on the allowed physical conditions. Dr. Fritzhand found Oberdier was incapable of work, noting the following findings:

> [Oberdier] has had longstanding pain involving the cervical spine with a well-documented cervical radiculopathy involving the right upper extremity. He has received multiple epidural steroid injections without significant pain relief and has markedly diminished range of motion. In addition, low back pain has remained refractory to medical management also including multiple epidural steroid injections for his longstanding lumbar radiculopathy. He ambulates with great difficulty and would be unable to ambulate more than a short distance or time without his cane. He cannot sit for more than short periods of time without exacerbation of underlying low back pain. He is unable to squat, stoop, kneel, crawl or climb. He would have great difficulty working overhead with the right upper extremity.

(Stip. at 20-21.) Dr. Fritzhand also noted Oberdier was incapable of housework or yardwork. Dr. Fritzhand also completed a physical strength rating, finding that Oberdier was incapable of work.

{¶ 33} 21. A staff hearing officer conducted a hearing on Oberdier's second application for permanent total disability compensation on May 16, 2024. The staff hearing officer denied the application in an order issued on May 21, 2024. In the order, the staff hearing officer provided a brief history of the claims at issue and found that this was Oberdier's second application for permanent total disability compensation.

{¶ 34} The staff hearing officer stated that the threshold issue was whether Oberdier had submitted "sufficient evidence" of new and changed circumstances such that the second application could be heard consistent with R.C. 4123.58(G). (Am. Stip. at 2.) The staff hearing officer listed a number of factors that the staff hearing officer found were not present in the claim, stating:

> The Staff Hearing Officer finds there have been no amendments or additional medical conditions allowed in this claim since [Oberdier's] last [permanent total disability] [a]pplication was adjudicated. The Staff Hearing Officer finds [Oberdier] has not undergone any surgeries or had other substantial medical procedures performed since [Oberdier's] last [permanent total disability] [a]pplication was adjudicated. The Staff Hearing Officer finds [Oberdier] has not requested any temporary total disability compensation since the prior permanent total disability compensation hearing which the Staff Hearing Officer finds is indicia that the [Oberdier's] medical conditions are essentially stable. The Staff Hearing Officer finds [Oberdier] did not provide any evidence or testimony at the hearing that he has attempted to return to work in any way. The Staff Hearing Officer also finds [Oberdier] did not provide any evidence that he attempted or even requested vocational rehabilitation in an effort to find gainful employment since the prior [permanent total disability] application was adjudicated.

(Am. Stip. at 2.)

{¶ 35} As reflected in the order, Oberdier's counsel argued new and changed circumstances existed because Oberdier, since his first permanent total disability application was adjudicated, had received an initial permanent partial disability award in the 2013 claim, an increase in percentage of permanent partial disability in the 2013 claim, and an increase in percentage of permanent partial disability in the 1989 claim. The staff hearing officer "did not find [Oberdier's] argument persuasive in this matter." (Am. Stip. at 3.) Further, the staff hearing officer stated that Oberdier's "receipt of an initial permanent partial disability award and a subsequent increase" in the 2013 claim and "an increase in his permanent partial disability award" in the 1989 claim "are not sufficient evidence of meaningful or substantial new and changed circumstances which would warrant readdressing [Oberdier's] request for permanent and total disability compensation at this time." *Id.* As a result, the staff hearing officer concluded Oberdier "has not submitted

sufficient persuasive evidence of new and changed circumstances in the above claims, as required by [R.C.] 4123.58(G), to warrant adjudicating another [permanent total disability] Application for [Oberdier] at this time." *Id.*

{¶ 36} 22. Oberdier filed a request for reconsideration of the May 21, 2024 order on May 31, 2024.

{¶ 37} 23. The commission denied Oberdier's May 31, 2024 request for reconsideration on June 15, 2024.

{¶ 38} 24. Oberdier commenced this mandamus action with the filing of his complaint on August 5, 2024.

{¶ 39} 25. The parties' stipulation of evidence was filed on November 13, 2024. An amended stipulation of evidence, which contained a complete copy of the May 21, 2024 staff hearing officer order, was filed on December 19, 2024.

## II. Discussion and Conclusions of Law

{¶ 40} Oberdier seeks a writ of mandamus ordering the commission to vacate its decision denying Oberdier's second application for permanent total disability.

## A. Requirements for Mandamus

{¶ 41} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, Oberdier must establish a clear legal right to the requested relief, that the commission has a clear legal duty to provide such relief, and the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). A writ of mandamus will issue where "there is a legal basis to compel the commission to perform its clear legal duty under the law, including when the commission has abused its discretion in carrying out its duties." *State ex rel. Belle Tire Distribs. v. Indus. Comm.*, 2018-Ohio-2122, ¶ 25. "Where a commission order is adequately explained and based on some evidence, even evidence that may be persuasively contradicted by other evidence of record, the order will not be disturbed as manifesting an abuse of discretion." *State ex rel. Mobley v. Indus. Comm. of Ohio*, 78 Ohio St.3d 579, 584 (1997). Additionally, a writ of mandamus " 'may issue against the Industrial Commission if the commission has incorrectly interpreted Ohio law.' " *State ex*

*rel. Cassens Corp. v. Indus. Comm. of Ohio*, 2024-Ohio-526, ¶ 10, quoting *State ex rel. Gassmann v. Indus. Comm.*, 41 Ohio St.2d 64, 65 (1975).

{¶ 42} "In any order of the Industrial Commission granting or denying benefits to a claimant, the commission must specifically state what evidence has been relied upon, and briefly explain the reasoning for its decision." *State ex rel. Noll v. Indus. Comm.*, 57 Ohio St.3d 203 (1991), at syllabus. "An order of the commission should make it readily apparent from the four corners of the decision that there is some evidence supporting it." *Id.* at 206.

## B. Statutory Requirements for Permanent Total Disability

{¶ 43} "[T]he purpose of permanent and total disability benefits is to compensate injured persons for impairment of earning capacity." *State ex rel. Stephenson v. Indus. Comm.*, 31 Ohio St.3d 167, 170 (1987), citing *State ex rel. Gen. Motors Corp. v. Indus. Comm.*, 42 Ohio St.2d 278 (1975). "Permanent total disability is the inability to do any sustained remunerative work." *State ex rel. Schultz v. Indus. Comm.*, 2002-Ohio-3316, ¶ 61, citing *Stephenson* at 170. *See* Adm.Code 4121-3-34(B)(1).

{¶ 44} R.C. 4123.58 governs compensation for permanent total disability, allowing compensation only when one of the following conditions is met:

> (1) The claimant has lost, or lost the use of both hands or both arms, or both feet or both legs, or both eyes, or of any two thereof; however, the loss or loss of use of one limb does not constitute the loss or loss of use of two body parts;
>
> (2) The impairment resulting from the employee's injury or occupational disease prevents the employee from engaging in sustained remunerative employment utilizing the employment skills that the employee has or may reasonably be expected to develop.

R.C. 4123.58(C).

{¶ 45} Circumstances prohibiting the awarding of permanent total disability compensation are contained in R.C. 4123.58(D), which provides as follows:

> Permanent total disability shall not be compensated when the reason the employee is unable to engage in sustained remunerative employment is due to any of the following reasons, whether individually or in combination:
>
> (1) Impairments of the employee that are not the result of an allowed injury or occupational disease;

(2) Solely the employee's age or aging;

(3) The employee retired or otherwise is not working for reasons unrelated to the allowed injury or occupational disease.

(4) The employee has not engaged in educational or rehabilitative efforts to enhance the employee's employability, unless such efforts are determined to be in vain.

R.C. 4123.58(D).

{¶ 46} R.C. 4123.58 was amended by 2021 Am.Sub.H.B. No. 75 ("H.B. 75"), which in part added R.C. 4123.58(G).[1] Effective September 28, 2021, R.C. 4123.58(G) provides:

If the industrial commission has adjudicated a claimant's application for compensation payable under this section for permanent total disability and issued a final order denying compensation for that application, the claimant shall present

---

[1] Following the amendments to R.C. 4123.58 enacted in H.B. 75, R.C. 4123.58 was again amended by the 134th General Assembly through the enactment of 2023 Am.Sub.H.B. No. 281 ("H.B. 281"). H.B. 281, which became effective April 6, 2023, made a minor change to R.C. 4123.58(F) by striking through and thereby deleting the word "handicapped," which immediately preceded "individuals," and inserting the phrase "with disabilities" after the aforementioned "individuals." However, the remaining text of R.C. 4123.58 in H.B. 281 did not include the text of R.C. 4123.58(G). H.B. 281 gave no specific indication that it intended to amend R.C. 4123.58 by removing R.C. 4123.58(G) through the usual means of striking through the existing text of R.C. 4123.58(G). *See* Adm.Code 103-5-01 ("Old matter that is to be omitted from an existing codified or uncodified section is indicated by retaining the matter as it appears in the section and striking it through with a horizontal line."); *State v. Wilson*, 77 Ohio St.3d 334, 337 (1997) (stating in considering the effect of a former version of R.C. 151.52 that "[m]atter to be affected by an 'existing sections' repeal must appear in the body of the enrolled Act and must be stricken through"). Section 2 of H.B. 281 provided in pertinent part: "That existing sections * * * 4123.58 * * * of the Revised Code are hereby repealed."

The Legislative Service Commission includes the text of R.C. 4123.58(G) in its official online version of the Revised Code. The following note from the Legislative Service Commission appears after the text of R.C. 4123.58 on its website: "The Legislative Service Commission presents the text of this section as amended by multiple acts of the General Assembly. This presentation recognizes the principle stated in R.C. 1.52(B) that amendments are to be harmonized if reasonably capable of simultaneous operation." Legislative Service Commission, *Section 4123.58*, https://codes.ohio.gov/ohio-revised-code/section-4123.58 (Accessed June 5, 2025.).

The provision in R.C. 1.52 noted by the Legislative Service Commission provides:

If amendments to the same statute are enacted at the same or different sessions of the legislature, one amendment without reference to another, the amendments are to be harmonized, if possible, so that effect may be given to each. If the amendments are substantively irreconcilable, the latest in date of enactment prevails. The fact that a later amendment restates language deleted by an earlier amendment, or fails to include language inserted by an earlier amendment, does not of itself make the amendments irreconcilable. Amendments are irreconcilable only when changes made by each cannot reasonably be put into simultaneous operation.

R.C. 1.52(B). *See State v. McCullough*, 2018-Ohio-4499, ¶ 11-12 (9th Dist.); *Wilson* at 337.

evidence of new and changed circumstances before the industrial commission may consider a subsequent application filed by the claimant for compensation under this section for the same injury or occupational disease identified in the previous application.

R.C. 4123.58(G). Thus, "the requirement in R.C. 4123.58(G) that a claimant demonstrate new or changed circumstances creates a procedural mechanism for the commission's adjudication of subsequent [permanent total disability] applications filed after the commission's denial of an initial application for [permanent total disability]." *State ex rel. Parrish v. Randolph*, 2024-Ohio-1135, ¶ 9 (10th Dist.). *See State ex rel. Prinkey v. Emerine's Towing, Inc.*, 2024-Ohio-5713, ¶ 21.

## C. Analysis

{¶ 47} Oberdier contends the commission abused its discretion by finding he failed to demonstrate new and changed circumstances as required by R.C. 4123.58(G) for his second permanent total disability application to be considered. Oberdier argues there was clearly evidence of new and changed circumstances based on the increases to the percentage of permanent partial disability in his claims and changes in the evaluations of the commission's specialists. In order to address the parties' arguments regarding whether the evidence met the requirements of R.C. 4123.58(G), it is first necessary to address the commission's interpretation and analysis of those requirements.

{¶ 48} With regard to Oberdier's second application for permanent total disability compensation, the staff hearing officer concluded Oberdier failed to present "sufficient evidence of **meaningful or substantial** new and changed circumstances which would warrant readdressing [Oberdier's] request for permanent and total disability compensation at this time." (Emphasis added.) (Am. Stip. at 3.) However, the plain text of R.C. 4123.58(G) only requires that a claimant "present **evidence** of new and changed circumstances before the industrial commission may consider a subsequent application" for permanent total disability compensation. (Emphasis added.) *See Prinkey* at ¶ 21. The statute does not require that the evidence presented be meaningful or substantial. By requiring Oberdier to present evidence meeting this different and seemingly heightened burden, the staff hearing officer effectively added language to the statute. However, neither a court nor the commission may add words when construing a statute. *See State v. Hughes*, 1999-

Ohio-118, 86 Ohio St.3d 424, 427 ("In construing a statute, we may not add or delete words."); *Lamie v. United States Trustee*, 540 U.S. 526, 538 (2004), quoting *Iselin v. United States*, 270 U.S. 245, 251 (1926) (rejecting a party's argument that "would result 'not [in] a construction of [the] statute, but, in effect, an enlargement of it by the court, so that what was omitted, presumably by inadvertence, may be included within its scope' " (Brackets in original.)); *State ex rel. LetOhioVote.org v. Brunner*, 2009-Ohio-4900, ¶ 49.

{¶ 49} Further underlining this point is the fact that the General Assembly has previously enacted a requirement in workers' compensation law for a party to demonstrate "substantial" evidence of new and changed circumstances. R.C. 4123.57, which pertains to partial disability compensation, provides that "[n]o application for subsequent percentage determinations on the same claim for injury or occupational disease shall be accepted for review by the district hearing officer unless supported by ***substantial** evidence of new and changed circumstances* developing since the time of the hearing on the original or last determination." (Emphasis added.) R.C. 4123.57(A). Thus, the General Assembly knew how to require a claimant to present "substantial" evidence of new and changed circumstances. *See Wilson v. Durrani*, 2020-Ohio-6827, ¶ 31 (finding that the General Assembly's incorporation of the saving statute in a product-liability statute demonstrated not only that "the General Assembly knew how to create an exception to a statute of repose for application of the saving statute when it intended to do so"). But it did not do so in R.C. 4123.58(G).

{¶ 50} By applying a different or heightened standard from that required by R.C. 4123.58(G) in evaluating whether Oberdier met his burden under the statute, the staff hearing officer committed legal error. *See Indus. Comm. of Ohio v. Ripke*, 129 Ohio St. 649 (1935), paragraph one of the syllabus ("It is prejudicial and reversible error for a court to place a condition upon a party's right to recover which the law itself does not impose."). *See also State v. Wilson*, 2024-Ohio-776, ¶ 21. For this reason alone, this matter must be remanded to the commission for it to make findings regarding R.C. 4123.58(G) under the proper legal standard. *See State ex rel. Ryan Alternative Staffing, Inc. v. Moss*, 2021-Ohio-3539, ¶ 21 (issuing limited writ ordering the commission to "reconsider this case under the proper standard, as articulated in this opinion").

{¶ 51} Nonetheless, the commission asserts that it acted within its discretion because Oberdier did not present evidence of new and changed circumstances. The Supreme Court of Ohio recently addressed the requirements of R.C. 4123.58(G) in *Prinkey*, 2024-Ohio-5713. In that case, Prinkey, the claimant, filed an initial application for permanent total disability that was supported by the opinions of a physician and a psychologist. Prinkey was also referred for examinations by a physician and psychologist selected by the commission. Prinkey's physician found Prinkey to be permanently and totally disabled, while the commission's physician found Prinkey had a 30-percent whole-person impairment and was capable of sedentary work with restrictions. Prinkey's psychologist opined that Prinkey's psychological condition resulted in a 25 percent disability and found Prinkey to be permanently and totally disabled. The commission's psychologist, on the other hand, opined Prinkey had a 3 percent impairment and was capable of work. Relying on reports from the commission's specialists to find Prinkey was medically capable of performing some sustained remunerative employment at the sedentary level, a commission staff hearing officer denied Prinkey's initial request for permanent total disability compensation.

{¶ 52} Approximately one and a half years after the initial application was denied, Prinkey filed a second application for permanent total disability compensation supported by reports from the same medical doctor and psychologist who had supported his initial application. At the commission's request, Prinkey was examined by two new specialists. The opinions of the physicians did not markedly differ from the initial application. However, the two psychologists submitted opinions "with noted differences from the earlier conclusions regarding Prinkey's first application," namely that (1) Prinkey's psychologist increased his percentage of whole-person impairment resulting from his psychological condition to 30 percent from 25 percent, again finding him permanently and totally disabled, and (2) the commission's psychologist found that Prinkey was incapable of work with a 35 percent whole-person impairment from his psychological condition, up from the 3 percent set by the commission's first psychologist. *Prinkey*, 2024-Ohio-5713, at ¶ 7. A commission staff hearing officer found that Prinkey failed to present evidence of new and changed circumstances as required by R.C. 4123.58(G) to permit the commission to adjudicate Prinkey's second request for permanent total

disability compensation. Thereafter, Prinkey filed a mandamus action challenging the denial of his second application for permanent total disability compensation. This court granted a limited writ returning the matter to the commission because the staff hearing officer failed to support the decision with evidence and reasoning as required by *Noll*, 57 Ohio St.3d 203.

{¶ 53} On appeal, the Supreme Court of Ohio analyzed R.C. 4123.58(G), noting that while the "phrase 'new and changed circumstances' is not defined under the statute," this same phrase "does have application elsewhere in workers' compensation law." *Prinkey*, 2024-Ohio-5713, at ¶ 21. The Court stated that "[b]ecause workers' compensation cases are largely fact-specific, what constitutes 'new and changed circumstances' is determined on a case-by-case basis." *Id.* at ¶ 22. Recalling the frequently repeated maxim that the commission is the sole evaluator of the weight and credibility of submitted evidence, the Court stated that the commission is "free to find that a medical report submitted with a subsequent application for [permanent total disability] compensation is not credible evidence of new and changed circumstances." *Id.* at ¶ 24. The Court, however, found that the staff hearing officer made no such finding with regard to the materials submitted in support of Prinkey's second application. The Court found the staff hearing officer "failed to provide any reasoning why the medical reports Prinkey submitted are not evidence of new and changed circumstances" and, moreover, "failed to cite the evidence on which it *relied* in reaching its decision, instead mentioning all the evidence it *considered*—namely, the previous [staff hearing officer's] order and the State's claim file." (Emphasis in original.) *Id.* "Given that the psychologists' reports in the claim file document a worsening of Prinkey's allowed conditions," the Court found that the staff hearing officer "could not have relied on the *entire* claim file in concluding that Prinkey failed to present *any* evidence of new and changed circumstances." (Emphasis in original.) *Id.* As a result, the Court affirmed the finding that the staff hearing officer's order failed to satisfy the requirements of *Noll*.

{¶ 54} In this matter, the staff hearing officer's order denying Oberdier's second application for permanent disability compensation bears substantial similarities to the order found to be deficient in *Prinkey*. Similar to *Prinkey*, there was a change in the opinions of the commission's specialists between Oberdier's first and second applications.

When the commission considered Oberdier's first application, both of the commission's specialists found he would be able to sustain at least some remunerative employment. With regard to the allowed physical conditions in the claim, Dr. Freeman found Oberdier had a 21 percent whole person impairment and would still be capable of sedentary work within the restrictions provided in the report. With regard to the allowed psychological condition, Dr. Stoeckel found Oberdier had a 25 percent whole person impairment and, subject to certain qualifications, would be capable of employment. At the time of the second application, however, two new specialists for the commission found increases in Oberdier's percentage of whole person impairment and concluded that Oberdier was incapable of employment. As a result of the allowed physical conditions, Dr. Fritzhand found Oberdier had a 29 percent whole person and was incapable of work. Dr. Halmi found Oberdier had a 29 percent whole person impairment and was permanently and totally unable to work as a result of his allowed psychological condition.

{¶ 55} Although the staff hearing officer's order included reasoning related to factors that were not submitted by Oberdier as evidence of new and changed circumstances, Oberdier asserts the staff hearing officer failed to address the medical reports, including the reports of the commission's own specialists, that were before the commission at the time of his second application. Perhaps seeking to avoid a repetition of the result in *Prinkey*, the commission asserts that Oberdier "cannot rely upon Drs. Fritzhand and Halmi," the commission's own specialists, "because those reports were generated *after* Mr. Oberdier submitted his second [permanent total disability] application." (Emphasis in original.) (Commission's Brief at 16.)

{¶ 56} Contrary to the commission's contention, the plain text of R.C. 4123.58(G) only requires a claimant to "present evidence of new and changed circumstances **before the industrial commission *may consider*** a subsequent application." (Emphasis added.) The statute does not contain a temporal limitation restricting the commission to consider only the evidence presented at the time the application was filed. *Compare* Adm.Code 4121-3-34(C)(1) ("If an application for compensation for permanent total disability is filed that does not meet the filing requirements of this rule, or if proper medical evidence is not identified within the claim file, the application shall be dismissed without hearing."). In this case, it is undisputed that the reports of Dr. Fritzhand and

Dr. Halmi, reports requested by the commission itself, were present in the record before the commission when the staff hearing officer conducted the hearing regarding whether Oberdier met the requirements of R.C. 4123.58(G). As a practical matter, and absent any express statutory command to the contrary, it makes little sense for the commission to have requested reports from its own specialists before making a determination under R.C. 4123.58(G) if such evidence could not be considered for that purpose. After all, if the requirements of R.C. 4123.58(G) are not met, the commission is prevented from considering the merits of a subsequent application for permanent total disability compensation.

{¶ 57} The commission's contention is also at odds with *Prinkey*. Notably, the Supreme Court of Ohio reached its conclusion in *Prinkey* that the order failed to comply with *Noll* based in part on the fact that the "**psychologists' reports** in the claim file document a worsening of Prinkey's allowed conditions." (Emphasis added.) *Prinkey* at ¶ 24. By referring to the findings in the—plural—psychologists' reports, the Court included in its analysis of R.C. 4123.58(G) the report of the commission's own psychologist in that case, a report that was not produced until after Prinkey had filed the subsequent application for permanent total disability compensation. Thus, to be clear, the Supreme Court considered not only the report of Prinkey's psychologist, but also the report of the commission's own psychologist in its analysis of whether the commission's order issued under R.C. 4123.58(G) met the requirements of *Noll*. Thus, the commission's arguments regarding the timing of its own specialists' reports are not persuasive, nor are they determinative of whether the commission complied with *Noll*.

{¶ 58} The commission asserts in its brief that the staff hearing officer "considered all the medical reports and non-medical information contained in the claim file." (Commission's Brief at 12.) The staff hearing officer's order included the boilerplate statement that "[a]ll evidence was reviewed and considered in rendering this decision." (Am. Stip. at 3.) However, the staff hearing officer "could not have relied on the *entire* claim file in concluding" that Oberdier failed to meet his burden of presenting evidence of new and changed circumstances "[g]iven that the [commission's specialists'] reports in the claim file document a worsening of [the] allowed conditions." (Emphasis in original.) *Prinkey* at ¶ 24. *See State ex rel. Donohoe v. Indus. Comm.*, 2011-Ohio-5798, ¶ 17 (noting

that this court acknowledged that the staff hearing officer's order in that case "contained the boilerplate 'all evidence was reviewed and considered,' " though "other language in the order cast doubt on the true extent of evidentiary review").

{¶ 59} In addition, the commission's aforementioned argument that Oberdier could not rely on the commission's own specialists' reports as evidence of new and changed circumstances raises a question regarding whether the staff hearing officer actually did consider such reports. As was the case in *Prinkey*, the staff hearing officer "failed to provide any reasoning why the medical reports" of the commission's own specialists "are not evidence of new and changed circumstances." *Prinkey* at ¶ 24. While the commission is free to find medical reports are not credible evidence of new and changed circumstances, it did not do so in this case. With regard to the basis for the order, the staff hearing officer stated: "This decision is based on the reasoning as noted above, on R.C. 4123.58(G), and on [*Parrish*,] . . . 2024-Ohio-1135." (Am. Stip. at 3.) Thus, while the staff hearing officer supplied some reasoning related to factors not presented by Oberdier as evidence of new and changed circumstances, the staff hearing officer's order "failed to cite the evidence on which it *relied* in reaching its decision, instead mentioning all the evidence it *considered*." (Emphasis in original.) *Prinkey* at ¶ 24.

{¶ 60} Next, the commission asserts that "an award of [permanent partial disability] compensation does not constitute new and changed circumstances for the purposes of [permanent total disability] consideration." (Commission's Brief at 15.) The commission provides no authority directly supporting this assertion, but instead points to the purpose of a permanent partial disability award in arguing that it cannot serve as evidence of new and changed circumstances. *See State ex rel. Kincaid v. Allen Refractories Co.*, 2006-Ohio-2195, ¶ 14 (10th Dist.) (stating that a permanent partial disability award is "akin to a damage award").

{¶ 61} As previously noted, in order for an application for an increase in percentage of permanent partial disability to be considered, R.C. 4123.57(A) requires a claimant to demonstrate "substantial evidence of new and changed circumstances" developing since the original award. It therefore follows that an order of the commission granting an increase in permanent partial disability was based on substantial evidence of new and changed circumstances. The commission does not explain how the substantial evidence of new and

changed circumstances, which would be required for an increase in percentage of permanent partial disability and were added to the record after the denial of an initial permanent total disability application, could not *also* be presented to show new and changed circumstances for a subsequent application for permanent total disability compensation.

{¶ 62} The commission's position is also not supported by the provisions of the Administrative Code applying to permanent total disability. Adm.Code 4121-3-34(D)(3) addresses "[f]actors considered in the adjudication of all applications for compensation for permanent total disability." Within this subsection, Adm.Code 4121-3-34(D)(3)(f) provides that "[t]he adjudicator shall not consider the injured worker's percentage of permanent partial impairment as the sole basis for adjudicating an application for compensation for permanent total disability." Thus, when the commission has jurisdiction to adjudicate an application for permanent total disability compensation, it may not use the percentage of permanent partial impairment as the **sole basis** for resolving the issue of permanent total disability. But this does not mean that it cannot be **a basis** for the commission's determination. Though these provisions apply to the adjudication of an application for permanent total disability compensation, there is no limitation on the commission's consideration of percentages of permanent partial disability in determining whether new and changed circumstances exist under R.C. 4123.58(G), which must be met "before the industrial commission may consider a subsequent application."

{¶ 63} Furthermore, increases in percentages of permanent partial disability can reflect the worsening or change of condition subsequent to the initial award. *See State ex rel. Hupcej v. Indus. Comm.*, 2024-Ohio-5920, ¶ 30 (10th Dist.) (adopting magistrate's decision finding that "[e]stablishing new and changed circumstances" for an application for an increase in a permanent partial disability award under R.C. 4123.57(A) "entails demonstrating that conditions have changed subsequent to the initial award" (Internal citations and quotations omitted.)); *State ex rel. DaimlerChrysler Corp. v. Majerowski*, 2006-Ohio-6428, ¶ 9 (10th Dist.) (finding that an initial permanent partial disability award granted after the denial of an initial permanent total disability claim did not reflect an increase of an already existing permanent partial disability award, and, therefore, did "not reflect a worsening" of the allowed condition). In this case, the commission issued

two orders increasing Oberdier's percentages of permanent partial disability that relied on medical reports added to the record after the initial permanent total disability application was denied. From this, the magistrate rejects the commission's assertion that increases in percentages of permanent partial disability cannot, as a matter of law, serve as evidence of new and changed circumstances.[2]

{¶ 64} Finally, while not determinative of this matter since it must be remanded to the commission to make findings under the proper legal standard, the magistrate notes that the burden under the plain text of R.C. 4123.58(G) is not a particularly demanding one. As the comparison with the text of R.C. 4123.57 makes clear, R.C. 4123.58(G) does not require that the evidence of new and changed circumstances meet a heightened standard, for example by requiring that such evidence be "meaningful" or "substantial," in order for the commission to consider a subsequent application. Nor does the statute require that the evidence presented meet a particular or heightened burden of proof. *Compare, e.g.*, Adm.Code 4121-3-34(D)(3)(a) ("The burden of proof shall be on the injured worker to establish a case of permanent total disability. The burden of proof is by preponderance of the evidence."). Rather, R.C. 4123.58(G) only requires the claimant to "**present evidence** of new and changed circumstances." (Emphasis added.) *See Parrish*, 2024-Ohio-1135, at ¶ 9 (stating that R.C. 4123.58(G) "requir[es] only that the claimant make an initial showing sufficient for the commission to consider the subsequent [permanent total disability] application"). Importantly, the initial showing required under R.C. 4123.58(G) does not alter the analysis of the merits of an application for permanent total disability compensation. *See id.* (stating that R.C. 4123.58(G) "does not foreclose a claimant's ability to make a subsequent application for [permanent total disability], impact the analysis of the merits of the [permanent total disability] application, or change the burden, nature, or quantum of proof a claimant must demonstrate to be entitled to [permanent total disability] compensation").

---

[2] The magistrate expressly makes no finding regarding whether the evidence of increases in percentage of permanent partial disability establishes new and changed circumstances under R.C. 4123.58(G) since such question must be resolved by the commission in the first instance under the proper legal standard.

## D. Conclusion

{¶ 65} The determination of whether a claimant has met the requirements of R.C. 4123.58(G) is a matter for the commission, as the exclusive evaluator finder of fact in workers compensation matters, to make in the first instance. *See generally State ex rel. Navistar, Inc. v. Indus. Comm. of Ohio*, 160 Ohio St.3d 7, 2020-Ohio-712, ¶ 21. However, in making this determination, the commission may not apply an incorrect legal standard. *See Ripke*, 129 Ohio St. 649, at paragraph one of the syllabus. Based on the foregoing, the magistrate finds the commission erred as a matter of law by applying an incorrect legal standard in determining that Oberdier failed to meet the requirements of R.C. 4123.58(G). Accordingly, it is the decision and recommendation of the magistrate that this court should grant a limited writ returning this matter to the commission for further proceedings in accordance with law and this decision.

/S/ MAGISTRATE
JOSEPH E. WENGER IV

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b). A party may file written objections to the magistrate's decision within fourteen days of the filing of the decision.