[Cite as *State ex rel. Parr v. Indus. Comm.*, 2025-Ohio-5595.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. James Parr, | : | |
| Relator, | : | No. 24AP-537 |
| v. | : | (REGULAR CALENDAR) |
| Ohio Industrial Commission et al., | : | |
| Respondents. | : | |

D E C I S I O N

Rendered on December 16, 2025

**On brief:** *Jurus, Workman & Muldoon LLC*, and *Michael J. Muldoon*, for relator.

**On brief:** *Dave Yost*, Attorney General, and *Diane Burris*, for respondent, Industrial Commission of Ohio.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

JAMISON, P.J.

{¶ 1} Relator, James Parr, initiated this original action requesting this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order denying relator's second application for permanent total disability ("PTD") compensation.

{¶ 2} As set forth more fully in the appealed magistrate's decision, a review of the record reveals the following relevant facts. On April 16, 1986, relator was injured while working as a legal documents courier for respondent, The Merchandise Warehouse Company ("Merchandise"). Relator was injured when his van was rear-ended by a police cruiser traveling at a high rate of speed. Relator's injuries included the following: cervical sprain/strain; thoracic sprain/strain; lumbar sprain/strain; right thigh contusion; left hip

contusion; lumbar disc displacement; cervical disc displacement; cervical radiculopathy; moderate major depressive disorder; cervical traumatic myofascial pain syndrome; and lumbar traumatic myofascial pain syndrome.

{¶ 3} From 1992 until 2021, relator worked a car parts technical sales position at JEGS. He applied for PTD in April 2021. In April 2022, the commission issued a decision finding that relator was capable of performing sustained remunerative employment and that he was not permanently and totally disabled. Relator, by and through counsel, requested that the commission reconsider its decision. However, that request was denied.

{¶ 4} In June 2022, relator applied for an increase of percentage of permanent partial disability ("PPD"). In February 2023, a staff hearing officer ("SHO") issued an order modifying a district hearing officer's previous order to the extent that relator had a PPD of 91 percent, an increase of 7 percent. Thus, relator was entitled to an additional award of compensation for a period of 14 weeks.

{¶ 5} Relator again applied for PTD in January 2024. In support of his application, relator presented an evaluation from Michael McGough, D.C. Dr. McGough conducted a musculoskeletal examination of relator in December 2023. Dr. McGough concluded that relator was 100 percent permanently and totally disabled.

{¶ 6} In March of 2024, at the request of the commission, Donald S. Scott, Ph.D., performed a mental and behavioral examination on relator. In his report, Dr. Scott found that relator had a whole person impairment of 40 percent. This was up from 30 percent at the time of his last examination. Dr. Scott opined that he did not believe that relator would be able to participate in remunerative employment. Ultimately, Dr. Scott concluded that relator was incapable of work.

{¶ 7} At the request of the commission, relator was also examined by Albert E. Becker, M.D. Dr. Becker concluded that relator suffered from 52 percent whole person impairment, which was up from 38 percent at the time of his last examination. Dr. Becker also opined that relator was capable of working in a sedentary capacity with occasional walking and standing. Relator was also capable of occasionally lifting/carrying/pushing/ pulling up to 10 pounds. Dr. Becker indicated that relator was capable of the aforementioned type of work 5 days per week, 4 hours per day.

{¶ 8}   In an order dated June 13, 2024, a SHO found that relator failed to submit "*sufficient persuasive* evidence of new and changed circumstances in this claim, as required by R.C. 4123.58(G), to warrant adjudicating another" application for PTD.   (Emphasis added.)  (Dec. 9, 2024 Stipulation of Evidence at 106.)  This decision was based on the SHO's finding that "there have been no amendments or additional medical conditions allowed in [relator's] claim since [his] last IC-2 Application was adjudicated." *Id*. at 105. In further support of his decision, the SHO found that relator had no significant medical procedures since his last adjudication and that he provided no evidence of efforts he made to return to gainful employment.

{¶ 9}   It is from that decision that relator appeals.

{¶ 10}  Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this court referred the matter to a magistrate.  The magistrate issued the appended decision, including findings of fact and conclusions of law.  The magistrate determined that the commission applied an incorrect legal standard to its analysis of whether relator met his burden under R.C. 4123.58(G) of presenting evidence of new and changed circumstances to enable the commission to consider relator's second application for PTD.  Thus, the magistrate recommended this court grant a limited writ returning this matter to the commission for further proceedings in accordance with law and this decision.

{¶ 11} The commission filed objections to the magistrate's decision.  Therefore, we must independently review the decision to ascertain whether the "magistrate has properly determined the factual issues and appropriately applied the law." Civ.R. 53(D)(4)(d).  The commission makes the following objections: (1) the commission applied the correct legal standard in determining that relator failed to establish new and changed circumstances as required in accordance with R.C. 4123.58(G); (2) the commission's order is based on some evidence; (3) the commission's order complies with *State ex rel. Prinkey v. Emerine's Towing, Inc*., 2024-Ohio-5713, and the requirements of *State ex rel. Noll v. Indus. Comm*., 57 Ohio St.3d 203 (1991); and (4) an increase in a PPD award does not automatically constitute new and changed circumstances pursuant to R.C. 4123.58(G).

{¶ 12} To be entitled to a writ of mandamus, relator must demonstrate a clear legal right to the relief sought, that the commission has a clear legal duty to provide such relief, and that there is no adequate remedy in the ordinary course of the law. *State ex rel.*

*Pressley v. Indus. Comm.*, 11 Ohio St.2d 141, 162-163 (1967). In the context of workers' compensation applications, a writ of mandamus is appropriate if the commission abused its discretion by entering an order unsupported by any evidence. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76, 78-79 (1986). This court will not find an abuse of discretion when there is some evidence in the record to support the commission's finding. *State ex rel. Rouch v. Eagle Tool & Machine Co.*, 26 Ohio St.3d 197, 198 (1986). The commission is the finder of fact. *State ex rel. Honda of America Mfg. Co., Inc. v. Indus. Comm.*, 2014-Ohio-5245, ¶ 10 (10th Dist.). If some evidence exists in the record, this court may not "second-guess the commission's evaluation of the evidence." *State ex rel. Black v. Indus. Comm.*, 2013-Ohio-4550, ¶ 22.

{¶ 13} In the commission's first objection, it asserts that the commission applied the correct legal standard in evaluating whether relator presented evidence of new and changed circumstances pursuant to R.C. 4123.58(G). More specifically, the commission argues that the language contained in the SHO's order is not indicative of him using a heightened standard when determining whether relator had presented evidence of new and changed circumstances.

{¶ 14} R.C. 4123.58(G) states as follows:

> If the industrial commission has adjudicated a claimant's application for compensation payable under this section for permanent total disability and issued a final order denying compensation for that application, the claimant shall present evidence of new and changed circumstances before the industrial commission may consider a subsequent application filed by the claimant for compensation under this section for the same injury or occupational disease identified in the previous application.

{¶ 15} The commission argues that the SHO properly recited, and employed, the standard contained in R.C. 4123.58(G). However, a review of the SHO's decision reveals that the SHO articulated that standard in various forms. At various points in the decision, the SHO referred to "sufficient evidence of 'new and changed circumstances' "; "sufficient evidence of meaningful or substantial new and changed circumstances"; and "sufficient persuasive evidence of new and changed circumstances." (Stipulation of Evidence at 105-106.) The plain language of R.C. 4123.58(G) states that the "claimant shall present evidence of new and changed circumstances." It is well-settled that neither a court nor a commission

may add words when interpreting a statute. *See Gabbard v. Madison Local School Dist. Bd. of Edn.*, 2021-Ohio-2067, 165 Ohio St.3d 390, 394, 396. Here, the SHO's addition of words such as "meaningful and substantial" improperly heightened the standard by which relator's evidence was evaluated.

{¶ 16} Indeed, this court was recently presented with this issue on multiple occasions. In *State ex rel. Peggy L. Davis v. Indus. Comm.*, 2025-Ohio-5152, ¶ 3, 6 (10th Dist.), we found that the SHO's finding that the relator did not present "sufficient evidence at the hearing of any **meaningful or substantial** new and changed circumstances" improperly heightened the relator's burden. (Emphasis in original.) (Internal quotation marks deleted and citation omitted.) Similarly, in *State ex rel. Michael Oberdier v. Indus. Comm.*, 2025-Ohio-5234, ¶ 7, we found that the commission applied the incorrect legal standard when it found that the relator failed to present "sufficient evidence of meaningful or substantial new and changed circumstances." (Internal quotation marks deleted and citation omitted.) In this case, the SHO used the exact same language at issue in *Davis* and *Oberdier*. Thus, it follows that our analysis in this matter should produce the same result.

{¶ 17} The commission attempts to argue that at the point the SHO used the "meaningful and substantial" language in his decision, he already applied the correct standard and found that relator had not submitted evidence of new and changed circumstances. However, we find that this argument is without merit. The SHO's use of "meaningful and substantial" was used regarding relator's evidence and arguments. It is undisputed that it is relator's burden to present evidence of new and changed circumstances. Thus, by the clear language of the decision, the SHO improperly used a heightened standard to evaluate relator's evidence. The language the commission points to that did not use "meaningful and substantial" was regarding the absence of certain evidence, such as the lack of evidence of new medical conditions, new substantial medical procedures, and efforts by relator to achieve gainful employment.

{¶ 18} The commission also argues that the SHO's finding that relator failed to submit "*sufficient* evidence of new and changed circumstances" is the proper standard because R.C. 4123.58(G) cannot be read to mean that any evidence presented, no matter how minor or persuasive, can be used to meet relator's burden. (Emphasis added.) (Stipulation of Evidence at 105.) Admittedly, this issue presents a more difficult question.

On the one hand, the use of the word "sufficient" suggests that relator has in fact presented evidence of new and changed circumstances. As previously stated, R.C. 4123.58(G) only requires that relator present evidence of new and changed circumstances. This plain language certainly suggests that relator need only present *any* evidence of new and changed circumstances. On the other hand, it is not unreasonable to interpret the SHO's finding that relator did not submit "sufficient evidence of new and changed circumstances" to mean that relator did not meet its statutory burden. Nevertheless, we need not resolve this issue due to the SHO improperly assessing relator's evidence under a "meaningful and substantial" standard.

{¶ 19} Based on the foregoing, we find that the magistrate properly concluded that the commission applied the incorrect legal standard under R.C. 4123.58(G). The commission's first objection is overruled.

{¶ 20} In its second objection, the commission argues that its order was based on some evidence. We were recently confronted with a nearly identical argument in *Oberdier*. In *Oberdier*, 2025-Ohio-5234, at ¶ 8 (10th Dist.), the commission argued that the magistrate erred in concluding that the commission's order was not based on some evidence. However, having found that the commission applied the incorrect legal standard, we determined that we could not find that the commission's decision was based on some evidence. *Id*. Thus, we found that because the commission failed to apply the correct standard, the matter had to be remanded to the commission to be analyzed under the correct standard. *Id*., citing *Mercado v. Chromalloy Am. Corp.*, 1990 Ohio App. LEXIS 4116, *6-7 (Sept. 20, 1990 10th Dist.). Given that we have also found that the commission used the incorrect legal standard in this matter, based on our decision in *Oberdier*, the commission's second objection is without merit.

{¶ 21} Based on the foregoing, the commission's second objection is overruled.

{¶ 22} In the commission's third objection, it argues that the magistrate erred in equating its order in this matter with the order in *Prinkey*. The commission argues that *Prinkey* is distinguishable from this case because the order in *Prinkey* was "barebones." (Respondent's Objs. at 12.) The commission also briefly mentions that its order was in compliance with the requirements of *Noll*. However, the commission's argument fails to account for the ultimate outcome in *Prinkey* and the facts that led to that outcome.

{¶ 23} In *Prinkey*, 2024-Ohio-5713, at ¶ 7, the relator's psychologist submitted an opinion that relator's whole-person impairment was 30 percent, up from 25 percent. Furthermore, he opined that the relator was permanently and totally disabled. *Id.* Additionally, the commission's psychologist found that the relator's whole-person impairment was 35 percent, up from 3 percent, and that the relator was incapable of work. *Id.* After a hearing, the SHO denied the relator's second application for PTD on the basis he had not submitted evidence of new and changed circumstances. *Id.* at ¶ 9. In its decision, the SHO stated that it considered the previous SHO's decision and the state's claim file. In finding that this court properly issued a limited writ of mandamus returning the matter to the commission for further proceedings, the Supreme Court of Ohio found that given the psychologists' reports documenting a worsening of the relator's conditions, "the SHO could not have relied on the *entire* claim file in concluding that [the relator] failed to present *any* evidence of new and changed circumstances." (Emphasis in original.) *Id.* at ¶ 24. In reaching this conclusion, the Supreme Court noted that the SHO failed to provide any reasoning why these medical reports were not evidence of new or changed circumstances. Ultimately, this court's decision that the SHO's order did not satisfy the requirements of *Noll* was affirmed.

{¶ 24} A review of the record in this matter reveals that this case is substantially similar to *Prinkey*. Here, similar to the relator's psychologist's opinion in *Prinkey*, relator in this matter submitted a report by Dr. McGough, indicating that relator was 100 percent permanently and totally disabled. Additionally, just as in *Prinkey*, the commission's medical reports documented increases in the percentage of relator's whole-person impairment. It should also be noted that the commission's psychologist opined that relator was incapable of work. In its decision, the SHO generically stated "[a]ll of the evidence was reviewed and considered in rendering this decision." (Stipulation of Evidence at 146.) Despite the aforementioned evidence of relator's increased whole-person impairment and incapability of work, the SHO found that there was no evidence of new and changed circumstances. However, just like the SHO in *Prinkey*, the SHO failed to explain why the aforementioned medical reports were not evidence of new and changed circumstances. Thus, given these similarities between this matter and *Prinkey*, we find that the magistrate properly applied *Prinkey* to this case.

{¶ 25} In its objections, the commission argues that we should not consider the commission's medical reports because relator allegedly did not meet his initial burden. This argument fails for two reasons. First, this argument ignores Dr. McGough's report, which relator submitted with his application. Second, as the magistrate points out, the decision in *Prinkey* was based on both the relator's and the commission's medical reports. The Supreme Court analyzed them together, not independently.

{¶ 26} Based on the foregoing, the commission's third objection is overruled.

{¶ 27} In its fourth objection, the commission argues that an increase in a PPD award does not automatically constitute new and changed circumstances pursuant to R.C. 4123.58(G). However, as previously indicated, relator's increase in his PPD award was not the only evidence of new and changed circumstances. The SHO's decision fails to even mention the medical reports in the record. Although we do not answer this question here, it is entirely possible that the totality of the evidence, including the medical reports and the increased PPD award, may constitute new and changed circumstances. As such, we do not need to resolve the question as to whether an increased PPD award alone demonstrates evidence of new and changed circumstances under R.C. 4123.58(G).

{¶ 28} Based on the foregoing, the commission's fourth objection is overruled.

{¶ 29} Upon review of the magistrate's decision, an independent review of the record, and due consideration of the commission's objections, we find the magistrate has properly determined the facts and applied the law. We therefore overrule the commission's objections and adopt the magistrate's decision, including the findings of fact and conclusions of law. Accordingly, we grant a limited writ of mandamus remanding this matter back to the commission for it to make findings regarding R.C. 4123.58(G) under the proper legal standard.

*Objections overruled;*
*limited writ of mandamus granted.*

BOGGS and EDELSTEIN, JJ., concur.

———————————

# APPENDIX

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. James Parr, | : | |
| Relator, | : | |
| v. | : | No. 24AP-537 |
| Ohio Industrial Commission et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

---

M A G I S T R A T E ' S   D E C I S I O N

Rendered on June 5, 2025

---

*Jurus, Workman and Muldoon LLC,* and *Michael J. Muldoon,* for relator.

*Dave Yost,* Attorney General, and *Diane Burris,* for respondent Industrial Commission of Ohio.

---

IN MANDAMUS

{¶ 30} Relator James Parr has applied for and been denied permanent total disability compensation two times. Respondent Industrial Commission of Ohio ("commission") denied the first application in 2022 because it found, based on the reports of the commission's own specialists, that Parr was able to perform sedentary work consistent with the restrictions in place at that time, and the nonmedical factors also supported finding Parr was capable of sustained remunerative employment. The commission denied the second application in 2024 because it found Parr had failed to meet the requirements of R.C. 4123.58(G), a prerequisite for the commission's adjudication of a subsequent application for permanent total disability compensation.

{¶ 31} In this action, Parr seeks a writ of mandamus ordering the commission to vacate its order denying the second application for permanent total disability compensation. For the following reasons, the magistrate recommends granting a limited writ of mandamus.

## I. Findings of Fact

{¶ 32} 1. On April 16, 1986, Parr suffered injuries in the course of and arising out of his employment as a driver with respondent The Merchandise Warehouse Company when a police vehicle traveling at a high rate of speed collided with Parr's van from behind. Parr's seat detached from its mounting, and Parr was thrown around inside the van. Parr was hospitalized for eight days and returned to work approximately two weeks later.

{¶ 33} 2. Parr's workers' compensation claim arising out of this incident was ultimately allowed for the following conditions: cervical sprain/strain; thoracic sprain/strain; lumbar sprain/strain; contusion right thigh; contusion left hip; lumbar disc displacement L3-S1; cervical disc displacement C4-5, C5-7; radiculopathy at C6-7, right; radiculopathy C5-6, left; major depressive disorder, single episode, moderate; traumatic myofascial pain syndrome cervical; traumatic myofascial pain syndrome lumbar. The claim was disallowed for bilateral carpal tunnel syndrome.

{¶ 34} 3. Parr's first application for permanent total disability (also referred to as an "IC-2"), which was dated October 19, 2021, was supported by medical documentation from a physician, psychiatrist, and psychologist.

{¶ 35} 4. Following the submission of his first application for permanent total disability, the commission referred Parr for examinations with multiple specialists.

{¶ 36} 5. At the request of the commission, Todd Finnerty, Psy.D., examined Parr on January 12, 2022 with regard to the allowed psychological condition in the claim. In a commission mental and behavioral health specialist report, Dr. Finnerty provided a summary of various topics, including the history of Parr's employment, condition, past treatment, and mental health. The report included the results of a mental status examination, a review of test results, and a review of the four functional areas. With regard to the four functional areas, Dr. Finnerty found a Class 3 Moderate impairment of 30 percent with regard to each of the following: (1) activities of daily living or typical day; (2) social functioning; (3) concentration, persistence, and pace; and (4) adaptation.

{¶ 37} Dr. Finnerty found Parr's allowed psychological condition had reached maximum medical improvement, as the condition was "static and well stabilized." (Stip. at 54.) Using the class and percentage of impairment due to the allowed psychological condition in each of the four functional areas, Dr. Finnerty found Parr had a Class 3 Moderate whole person impairment of 30 percent. Based on the interview, review of the record, and examination of Parr, Dr. Finnerty found with regard to only the allowed psychological condition that Parr "retains the capacity to sustain a static set of tasks without fast pace or frequent changes which may exacerbate maladaptive responses to stress" in addition to being able to "interact with others superficially." (Stip. at 55.) On an occupational activity assessment mental and behavioral assessment form provided by the commission, Dr. Finnerty indicated Parr was capable of work with the following limitation: "He can sustain a static set of tasks without fast pace or frequent changes which may exacerbate maladaptive responses to stress. He can interact with others superficially." (Stip. at 56.)

{¶ 38} 5. Also at the request of the commission, Parr was examined on January 18, 2022 by Babatunde T. Onamusi, M.D., for purposes of providing an opinion on the allowed physical conditions in the claim. In a commission specialist's report, Dr. Onamusi summarized the history of Parr's condition, current symptoms, the impact of the condition on his activities. The physical evaluation revealed that Parr walked with a limp and his stance was unsteady without a cane. Dr. Onamusi examined Parr's range of motion for the cervical spine, thoracic spine, lumbar spine, and left hip. Using the range of motion method in determining whole person impairment with regard to the allowed cervical and lumbar spine conditions, Dr. Onamusi opined:

> With regard to the allowed conditions of cervical sprain/strain; cervical disc displacement C4-5, C5-7; radiculopathy at C6-7, right; radiculopathy C5-6, left; traumatic myofascial pain syndrome cervical, and with reference to the accompanying worksheet, using Table 15-12 on Page 418, Table 15-13 on Page 420, and Table 15-14 on Page 421, range of motion deficits total 11% whole person impairment. Using Table 15-7 on Page 404, [Parr] has 8% whole person impairment. There were no motor or sensory deficits upon examination. Using the Combined Values Chart on Page 604, these impairments combine to total 18% whole person impairment for these allowed conditions.

> With regard to the allowed conditions of lumbar sprain/strain; lumbar disc displacement L3-S1; and traumatic myofascial pain syndrome lumbar and with reference to the accompanying worksheet, using Table 15-8 on Page 407 and Table 15-9 on Page 409, range of motion deficits total 16% whole person impairment. Using Table 15-7 on Page 404, [Parr] has 9% whole person impairment. There were no motor or sensory deficits upon examination. Using the Combined Values Chart on Page 604, these impairments combine to total 24% whole person impairment for these allowed conditions.
>
> With regard to the allowed conditions of thoracic sprain/strain and contusion right thigh, there were no residual deficits upon examination, and no objective findings or functional impairment related to these allowed conditions and, therefore, [Parr] has 0% whole person impairment for these allowed conditions.

(Stip. at 31.) Combining these values, Dr. Onamusi found Parr had a whole person impairment of 38 percent.

{¶ 39} Dr. Onamusi concluded Parr had reached maximum medical improvement for the allowed physical conditions in the claim based on a finding that there had been "no significant, recent change in symptomatology, treatment or function in the recent past." *Id.* at 30. With regard to Parr's residual functional capacity, Dr. Onamusi found that, based on the results of the physical examination, treatment received, response to treatment, and effects of the injury on activities of daily living, Parr was capable of sustaining remunerative activity at a sedentary work level. In so finding, Dr. Onamusi noted Parr was "able to sit frequently, stand or walk occasionally using an assistive device, and lift, carry, push and pull up to 10 pounds occasionally." *Id.* at 32.

{¶ 40} Dr. Onamusi also completed a physical strength rating form provided by the commission. On the form, Dr. Onamusi indicated, with reference to the report, that Parr was capable of sedentary work with restrictions of "[n]o bending, squatting." *Id.* at 34.

{¶ 41} 6. A hearing on Parr's first application for permanent total disability was conducted by a commission staff hearing officer on April 6, 2022. In an order issued on April 16, 2022, 36 years after the incident giving rise to Parr's occupational injury, the staff hearing officer denied Parr's application.

{¶ 42} The staff hearing officer summarized some of the history from Parr's workers' compensation claim. As set forth in the order, Parr received temporary total disability

compensation for a period ending on July 15, 1992. Beginning in 1989, Parr participated in vocational rehabilitation and received living maintenance compensation. Parr's vocational rehabilitation case was closed on February 2, 1994 based on Parr's successful return to employment as a sales representative. Following his return to work from vocational rehabilitation, Parr maintained his employment with the same employer for 27 years. On February 9, 2021, Parr "announced his departure in writing," providing as a reason that "his 'spine can't take it anymore.' " (Stip. at 36.) The staff hearing officer noted some of Parr's treatment for the allowed conditions, including treatment with pain management physicians and "lumbar spinal injections." *Id.* The staff hearing officer also noted Parr had "never been a surgical candidate." *Id.*

{¶ 43} Relying on the reports of Dr. Onamusi and Dr. Finnerty, the staff hearing officer found that, "when only the impairments arising from the allowed conditions are considered, [Parr] has the residual functional capacity to perform sedentary work activity with the added restriction outlined by Dr. Onamusi and Dr. Finnerty." *Id.* The staff hearing officer analyzed the nonmedical disability factors, finding Parr was "qualified by age, education, and skilled work history to obtain and perform work at [a sedentary] level." *Id.* at 38. Considering Parr's medical impairment in conjunction with nonmedical disability factors, the staff hearing officer found Parr to be capable of sustained remunerative employment, and, therefore, not permanently and totally disabled.

{¶ 44} 7. Parr requested reconsideration of the April 16, 2022 order before the commission. The commission denied Parr's request in an order issued on May 19, 2022.

{¶ 45} 8. In an order issued June 17, 2022, a commission district hearing officer granted a request for bilateral sacroiliac joint injections.

{¶ 46} 9. In an order issued November 23, 2022, a district hearing officer granted a request for cervical epidural steroid injections.

{¶ 47} 10. On February 15, 2023, a staff hearing officer conducted a hearing on an "IC-88 Application For Permanent Partial Reconsideration of District Hearing Officer order from the hearing dated [December 28, 2022], filed by [Parr] on [January 9, 2023]." (Stip. at 61.)[1] On February 22, 2023, the staff hearing officer issued an order that

---

[1] Neither the January 9, 2023 application, nor the district hearing officer's order following the December 28, 2022 hearing appear in the record in this matter.

"modifie[d] the District Hearing Officer's order issued [December 31, 2022] to the extent that [Parr] is found to have a permanent partial disability of 91%, which is an increase of 7%, which entitles [Parr] to an additional award of compensation for a period of 14 weeks." *Id.* The staff hearing officer based this determination on "the reports of Deborah Koricke, Ph.D., dated [September 15, 2022], and Todd Finnerty, Psy.D., dated [January 12, 2022]." *Id.*[2]

{¶ 48} 11. In a letter mailed on February 22, 2023, the same date the staff hearing officer issued the order granting an increase in percentage of permanent partial disability, the Bureau of Workers' Compensation ("bureau") found Parr to be entitled to an increase in the percent of permanent partial award in the amount of 9 percent, to be paid as 18 weeks. The bureau stated that "per [R.C.] 4123.57(A), if a Claimant has a 90% or greater permanent partial impairment, they are entitled to the difference which [will] bring them to a 100% Whole Person Impairment." (Stip. at 65.) The bureau stated: "The award granted by this order, when combined with the previously granted percent of permanent partial impairment awards listed below, bring[s] the total percent of impairment for [Parr] to 91%. An additional 9% is granted according to Ohio Revised Code to bring [Parr] to 100% whole person impairment." (Stip. at 64.)

{¶ 49} 12. Michael McGough, D.C., conducted a musculoskeletal examination of Parr on December 28, 2023. In a report dated January 18, 2024, Dr. McGough noted that Parr had a "100% partial disability" and found "[b]ased on chiropractic certainty, it is my professional opinion that Mr. Parr is 100% permanently and totally disabled." (Stip. at 66.)

{¶ 50} 13. Parr's second application for compensation for permanent total disability, which Parr signed on January 29, 2024, was supported by Dr. McGough's January 18, 2024 report.

{¶ 51} 14. In response to Parr's second application for permanent total disability compensation, Parr was examined at the request of the commission by Donald S. Scott, Ph.D., on March 28, 2024, for purposes of providing a mental and behavioral health specialist report regarding the allowed psychological condition. In the report, which was dated April 2, 2024, Dr. Scott detailed the history of Parr's condition, current symptoms, and the results of the mental status examination, among other topics.

---

[2] The report of Dr. Koricke does not appear in the record in this matter.

{¶ 52} Dr. Scott also provided an opinion in response to a series of questions from the commission. Dr. Scott found Parr had reached maximum medical improvement regarding the allowed psychological condition based on the absence of any significant change in symptoms, treatment, medication, and function. Upon being asked to provide a class and percentage of impairment due to the allowed psychological condition for the four functional areas, Dr. Scott found Parr had a moderate 30 percent impairment regarding activities of daily living or typical day; a moderate, 50 percent impairment regarding social functioning; a moderate, 30 percent impairment regarding concentration, persistence, and pace; and a moderate, 30 percent impairment regarding adaptation. Considering these percentages, Dr. Scott found Parr had a whole person impairment of 40 percent. With regard to Parr's residual functional capacity resulting from the impairment associated with the allowed psychological condition, Dr. Scott stated:

> I do not believe [Parr] would be able to participate in remunerative employment. As described above, [Parr] presents on the surface as someone who could easily interact with others on a limited basis. . . . But I believe on a day in and day out basis, interaction with others would demand too much emotional stamina and the likelihood of regression after a period of time would be quite high. Another factor that would promote regression is Mr. Parr's poor sleep regulation. Poor sleep interferes with the ability to psychologically recover from stress.

(Stip. at 88.)

{¶ 53} At the request of the commission, Dr. Scott completed an occupational activity assessment mental and behavioral examination form. Dr. Scott indicated on the form that Parr was incapable of work, pointing to his response related to Parr's residual functional capacity.

{¶ 54} 15. On March 19, 2024, Albert E. Becker, Jr., M.D., examined Parr at the request of the commission with regard to the allowed physical conditions in the claim. In a commission specialist report, Dr. Becker stated that all medical records provided by the commission had been reviewed. Dr. Becker summarized, among other topics, the history of Parr's present conditions, current symptoms, Parr's subjective report of the impact of the allowed conditions, and the results of the physical examination. Finding Parr had "reached a treatment plateau where no fundamental functional or physiologic change can be expected within reasonable medical probability, despite further treatment interventions,"

Dr. Becker concluded Parr had reached maximum medical improvement for the allowed, physical conditions in the claim. (Stip. at 98.) Dr. Becker stated that Parr "requires only maintenance therapy with a pain management physician" with "no further[] functional or physiological improvement anticipated with regard to the allowed, physical conditions, with or without further treatment." *Id.*

{¶ 55} Dr. Becker provided an estimated percentage of whole person impairment from each allowed condition as follows: (1) for contusion of right thigh and left hip, 0 percent; (2) for thoracic sprain/strain, 5 percent; (3) for cervical sprain/strain, cervical disc displacement C4-5, C5-7, radiculopathy at C6-7 right, and radiculopathy C5-6 left, 28 percent; (4) for lumbar sprain/strain and lumbar disc displacement L3-S1, 27 percent; and (5) for traumatic myofascial pain syndrome cervical and traumatic, 3 percent. Combining the above values, Dr. Becker found Parr had a 52 percent whole person impairment resulting from the allowed physical conditions.

> With regard to Parr's residual functional capacity, Dr. Becker stated:

> [Parr] has poor tolerance for activities of daily living and is heavily dependent on his wife to complete those. He can sit for 1-3 hours primarily in his lift chair. He can stand and walk each only 30 minutes, and can only carry things as heavy as a gallon of milk. He participates in minimal activities of daily living at home, with riding a grocery cart at the grocery store and doing some light cooking. He has had to give up his avocations of shooting rifle and sailing.

> Objectively, [Parr] demonstrates persistent pain to palpation, diminished reflexes, and impaired motor strength of the left deltoid and the left extensor hallucis longus. He is dependent on the use of a cane for ambulation, as demonstrated in the office upon examination.

(Stip. at 100-01.) Following this summary, Dr. Becker opined that Parr was "capable of only working in a sedentary capacity, mostly sitting, with occasional walking and standing, capable of lifting/carrying/pushing/pulling up to 10 pounds occasionally, 4 hours a day, 5 days a week." *Id.* at 101.

{¶ 56} Dr. Becker also completed a physical strength rating form provided by the commission. On the form, Dr. Becker indicated Parr was capable of "sedentary work" and indicated "see report" with regard to further limitations. *Id.* at 102.

{¶ 57} 16. A staff hearing officer conducted a hearing on Parr's second application for permanent total disability compensation on June 13, 2024. At the hearing, counsel for Parr made the following arguments regarding the requirements of R.C. 4123.58(G):

> I will address the Administrator's position about new and changed circumstances. Since the last denial of permanent total disability, his claim has been raised – his permanent partial disability was raised from 84 percent to 100 percent because of the significance of his injury concerning this claim. Also, you can see significant additional treatment by Dr. Lingham, his board certified pain management specialist, also has been approved in this case.
>
> The recent specialist who examined him orthopedically, previous doctor had indicated 38 percent impairment. The recent evaluation by Dr. Becker indicates his impairment at 52 percent. That's a 14-percent increase in his permanent partial since the last determination.
>
> The psychologist, Dr. Scott, in this case indicates his impairment at 40 percent where the previous examiner had his impairment at 30 percent, so there's a ten-percent increase to his permanent partial disability. Therefore, we certainly feel that these represent new and changed circumstances, not only the significant additional treatment, also he's now been granted 100 percent permanent partial disability and both the new examining specialists for the Industrial Commission indicated a significant change in his medical impairments.

(Stip. at 116-17.)

{¶ 58} 17. In an order issued June 18, 2024, the staff hearing officer denied Parr's application. Initially, the staff hearing officer noted Parr had not received or requested temporary total disability compensation since July 15, 1992, when he was found to be at maximum medical improvement for the physical conditions that were allowed at that time in the claim. The staff hearing officer found Parr last worked on February 21, 2021.

{¶ 59} Noting that Parr had previously sought and been denied permanent total disability compensation, the staff hearing officer cited R.C. 4123.58(G) and stated the "threshold issue in this hearing was whether [Parr] had submitted sufficient evidence of 'new and changed circumstances' in this claim such that another IC-2 Application should be adjudicated by the [commission]." (Stip. at 105.) The staff hearing officer made the following findings related to this issue:

> The Staff Hearing Officer finds [Parr] has not submitted sufficient evidence of new and changed circumstances to warrant adjudicating another IC-2 Application for this claim. The Staff Hearing Officer finds there have been no amendments or additional medical conditions allowed in this claim since [Parr's] last IC-2 Application was adjudicated. The Staff Hearing Officer finds [Parr] has not undergone any surgeries or had other substantial medical procedures performed since [Parr's] last IC-2 Application was adjudicated. The Staff Hearing Officer finds [Parr] has not requested any temporary total disability compensation since the prior permanent total disability compensation hearing which the Staff Hearing Officer finds is indicia that [Parr's] medical conditions are essentially stable. The Staff Hearing Officer finds [Parr] did not provide any evidence or testimony at the hearing that he has attempted to return to work in any way. The Staff Hearing Officer also finds [Parr] did not provide any evidence that he attempted or even requested vocational rehabilitation in an effort to find gainful employment since the prior IC-2 Application was adjudicated.

*Id.*

{¶ 60} The staff hearing officer noted that Parr's counsel argued at the hearing that Parr "had a significant amount of additional treatment" and "received an increase in his permanent partial disability award" since the last application was adjudicated. *Id.* Parr argued that these facts were "evidence new and changed circumstances exist in this claim such that another IC-2 Application should be adjudicated." *Id.*

{¶ 61} The staff hearing officer rejected Parr's argument, finding it was not "persuasive in this matter." *Id.* The staff hearing officer found Parr's "additional treatment (consisting simply of injections to his neck and lower back and psychotherapy medication management) has been palliative in nature and therefore is not sufficient evidence of meaningful or substantial new and changed circumstances which would warrant readdressing [Parr's] request for permanent and total disability compensation at this time." *Id.* at 105-06. Similarly, the staff hearing officer found Parr's "receipt of an increase in his permanent partial disability award is also not sufficient evidence of meaningful or substantial new and changed circumstances which would warrant readdressing [Parr's] request for permanent and total disability compensation at this time." *Id.* at 106. "Based on the foregoing," the staff hearing officer found Parr had "not submitted sufficient persuasive

evidence of new and changed circumstances in this claim, as required by R.C. 4123.58(G), to warrant adjudicating another IC-2 Application for [Parr] at this time." *Id.*

{¶ 62} The staff hearing officer stated that "[t]his decision is based on the reasoning as noted above, on R.C. 4123.58(G), and on *State ex rel. Parrish v. Walter Randolph & Carl Fritschi*, 10th Dist. No. 22AP-134, 2024-Ohio-1135." (Stip. at 106.) The staff hearing officer concluded by stating "[a]ll evidence was reviewed and considered in rendering this decision." *Id.*

{¶ 63} 18. Parr commenced this mandamus action with the filing of his complaint on August 27, 2024.

## II. Discussion and Conclusions of Law

{¶ 64} Parr seeks a writ of mandamus ordering the commission to vacate its decision denying Parr's second application for permanent total disability compensation.

## A. Requirements for Mandamus

{¶ 65} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, Parr must establish a clear legal right to the requested relief, that the commission has a clear legal duty to provide such relief, and the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). A writ of mandamus will issue where "there is a legal basis to compel the commission to perform its clear legal duty under the law, including when the commission has abused its discretion in carrying out its duties." *State ex rel. Belle Tire Distribs. v. Indus. Comm.*, 2018-Ohio-2122, ¶ 25. "Where a commission order is adequately explained and based on some evidence, even evidence that may be persuasively contradicted by other evidence of record, the order will not be disturbed as manifesting an abuse of discretion." *State ex rel. Mobley v. Indus. Comm. of Ohio*, 78 Ohio St.3d 579, 584 (1997). Additionally, a writ of mandamus " 'may issue against the Industrial Commission if the commission has incorrectly interpreted Ohio law.' " *State ex rel. Cassens Corp. v. Indus. Comm. of Ohio*, 2024-Ohio-526, ¶ 10, quoting *State ex rel. Gassmann v. Indus. Comm.*, 41 Ohio St.2d 64, 65 (1975).

{¶ 66} "In any order of the Industrial Commission granting or denying benefits to a claimant, the commission must specifically state what evidence has been relied upon, and briefly explain the reasoning for its decision." *State ex rel. Noll v. Indus. Comm.*, 57 Ohio

St.3d 203 (1991), at syllabus. "An order of the commission should make it readily apparent from the four corners of the decision that there is some evidence supporting it." *Id.* at 206.

**B. Statutory Requirements for Permanent Total Disability**

{¶ 67} Permanent total disability benefits are intended to "compensate injured persons for impairment of earning capacity." *State ex rel. Stephenson v. Indus. Comm.*, 31 Ohio St.3d 167, 170 (1987), citing *State ex rel. Gen. Motors Corp. v. Indus. Comm.*, 42 Ohio St.2d 278 (1975). "Permanent total disability is the inability to do any sustained remunerative work." *State ex rel. Schultz v. Indus. Comm.*, 2002-Ohio-3316, ¶ 61, citing *Stephenson* at 170. *See* Adm.Code 4121-3-34(B)(1).

{¶ 68} R.C. 4123.58 governs compensation for permanent total disability, allowing compensation only when one of the following conditions is met:

> (1) The claimant has lost, or lost the use of both hands or both arms, or both feet or both legs, or both eyes, or of any two thereof; however, the loss or loss of use of one limb does not constitute the loss or loss of use of two body parts;
>
> (2) The impairment resulting from the employee's injury or occupational disease prevents the employee from engaging in sustained remunerative employment utilizing the employment skills that the employee has or may reasonably be expected to develop.

R.C. 4123.58(C).

{¶ 69} Circumstances prohibiting the awarding of permanent total disability compensation are contained in R.C. 4123.58(D), which provides as follows:

> Permanent total disability shall not be compensated when the reason the employee is unable to engage in sustained remunerative employment is due to any of the following reasons, whether individually or in combination:
>
> (1) Impairments of the employee that are not the result of an allowed injury or occupational disease;
>
> (2) Solely the employee's age or aging;
>
> (3) The employee retired or otherwise is not working for reasons unrelated to the allowed injury or occupational disease.
>
> (4) The employee has not engaged in educational or rehabilitative efforts to enhance the employee's employability, unless such efforts are determined to be in vain.

R.C. 4123.58(D).

{¶ 70} R.C. 4123.58 was amended by 2021 Am.Sub.H.B. No. 75 ("H.B. 75"), which in part added R.C. 4123.58(G).[3] Effective September 28, 2021, R.C. 4123.58(G) provides:

> If the industrial commission has adjudicated a claimant's application for compensation payable under this section for permanent total disability and issued a final order denying compensation for that application, the claimant shall present evidence of new and changed circumstances before the industrial commission may consider a subsequent application filed by the claimant for compensation under this section for the same injury or occupational disease identified in the previous application.

R.C. 4123.58(G). "[T]he requirement in R.C. 4123.58(G) that a claimant demonstrate new or changed circumstances creates a procedural mechanism for the commission's

---

[3] Following the amendments to R.C. 4123.58 enacted in H.B. 75, R.C. 4123.58 was again amended by the 134th General Assembly through the enactment of 2023 Am.Sub.H.B. No. 281 ("H.B. 281"). H.B. 281, which became effective April 6, 2023, made a minor change to R.C. 4123.58(F) by striking through and thereby deleting the word "handicapped," which immediately preceded "individuals," and inserting the phrase "with disabilities" after the aforementioned "individuals." However, the remaining text of R.C. 4123.58 in H.B. 281 did not include the text of R.C. 4123.58(G). H.B. 281 gave no specific indication that it intended to amend R.C. 4123.58 by removing R.C. 4123.58(G) through the usual means of striking through the existing text of R.C. 4123.58(G). *See* Adm.Code 103-5-01 ("Old matter that is to be omitted from an existing codified or uncodified section is indicated by retaining the matter as it appears in the section and striking it through with a horizontal line."); *State v. Wilson*, 77 Ohio St.3d 334, 337 (1997) (stating in considering the effect of a former version of R.C. 151.52 that "[m]atter to be affected by an 'existing sections' repeal must appear in the body of the enrolled Act and must be stricken through"). Section 2 of H.B. 281 provided in pertinent part: "That existing sections * * * 4123.58 * * * of the Revised Code are hereby repealed."

The Legislative Service Commission includes the text of R.C. 4123.58(G) in its official online version of the Revised Code. The following note from the Legislative Service Commission appears after the text of R.C. 4123.58 on its website: "The Legislative Service Commission presents the text of this section as a composite of the section as amended by multiple acts of the General Assembly. This presentation recognizes the principle stated in R.C. 1.52(B) that amendments are to be harmonized if reasonably capable of simultaneous operation." Legislative Service Commission, *Section 4123.58*, https://codes.ohio.gov/ohio-revised-code/section-4123.58 (accessed June 5, 2025).

The provision in R.C. 1.52 noted by the Legislative Service Commission provides:

> If amendments to the same statute are enacted at the same or different sessions of the legislature, one amendment without reference to another, the amendments are to be harmonized, if possible, so that effect may be given to each. If the amendments are substantively irreconcilable, the latest in date of enactment prevails. The fact that a later amendment restates language deleted by an earlier amendment, or fails to include language inserted by an earlier amendment, does not of itself make the amendments irreconcilable. Amendments are irreconcilable only when changes made by each cannot reasonably be put into simultaneous operation.

R.C. 1.52(B). *See State v. McCullough*, 2018-Ohio-4499, ¶ 11-12 (9th Dist.); *Wilson* at 337.

adjudication of subsequent [permanent total disability] applications filed after the commission's denial of an initial application for [permanent total disability]." *State ex rel. Parrish v. Randolph*, 2024-Ohio-1135, ¶ 9 (10th Dist.). *See State ex rel. Prinkey v. Emerine's Towing, Inc.*, 2024-Ohio-5713, ¶ 21.

## C. Analysis

{¶ 71} Parr asserts the commission abused its discretion by denying his second application for permanent total disability compensation based on the requirement in R.C. 4123.58(G) to demonstrate new and changed circumstances. Parr argues there were clear changes in circumstances based on the increases to the percentage of permanent partial disability in his claims, additional treatment, and changes in the commission's specialists. To address the parties' arguments regarding whether the requirements of R.C. 4123.58(G) were satisfied, it is first necessary to address the commission's interpretation and analysis of those requirements.

{¶ 72} In denying Parr's second application for permanent total disability compensation, the staff hearing officer found Parr failed to present "sufficient evidence of **meaningful or substantial** new and changed circumstances which would warrant readdressing [Parr's] request for permanent and total disability compensation at this time." (Emphasis added.) (Stip. at 105-06.) Similarly, the staff hearing officer found Parr's "receipt of an increase in his permanent partial disability award is also not sufficient evidence of **meaningful or substantial** new and changed circumstances which would warrant readdressing [Parr's] request for permanent and total disability compensation at this time." (Emphasis added.) (Stip. at 106.)

{¶ 73} The plain text of R.C. 4123.58(G), however, only requires a claimant to "present **evidence** of new and changed circumstances before the industrial commission may consider a subsequent application" for permanent total disability compensation. (Emphasis added.) The statute does not require that the evidence presented be meaningful or substantial. By requiring the claimant to present evidence meeting this different or heightened burden, the staff hearing officer effectively added language to the statute. However, neither a court nor an administrative body such as the commission may add words when construing a statute. *See State v. Hughes*, 1999-Ohio-118, 86 Ohio St.3d 424, 427 ("In construing a statute, we may not add or delete words."); *Lamie v. United States*

*Trustee*, 540 U.S. 526, 538 (2004), quoting *Iselin v. United States*, 270 U.S. 245, 251 (1926) (rejecting a party's argument that "would result 'not [in] a construction of [the] statute, but, in effect, an enlargement of it by the court, so that what was omitted, presumably by inadvertence, may be included within its scope.' " (Brackets in original.)); *State ex rel. LetOhioVote.org v. Brunner*, 2009-Ohio-4900, ¶ 49.

{¶ 74} Of note, the General Assembly has previously enacted a requirement in workers' compensation law for a party to demonstrate "substantial" evidence of new and changed circumstances. R.C. 4123.57, which pertains to partial disability compensation, provides that "[n]o application for subsequent percentage determinations on the same claim for injury or occupational disease shall be accepted for review by the district hearing officer unless supported by ***substantial** evidence of new and changed circumstances* developing since the time of the hearing on the original or last determination." (Emphasis added.) R.C. 4123.57(A). Thus, the General Assembly knew how to require a claimant to present "substantial" evidence of new and changed circumstances. *See Wilson v. Durrani*, 2020-Ohio-6827, ¶ 31 (finding that the General Assembly's incorporation of the saving statute in a product-liability statute demonstrated not only that "the General Assembly knew how to create an exception to a statute of repose for application of the saving statute when it intended to do so"). But it did not do so in enacting R.C. 4123.58(G).

{¶ 75} Thus, by applying a different or heightened standard from that required by R.C. 4123.58(G) in evaluating whether Parr met his burden under the statute, the staff hearing officer committed legal error. *See Indus. Comm. of Ohio v. Ripke*, 129 Ohio St. 649 (1935), paragraph one of the syllabus ("It is prejudicial and reversible error for a court to place a condition upon a party's right to recover which the law itself does not impose."). *See also State v. Wilson*, 2024-Ohio-776, ¶ 21. For this reason alone, this matter must be remanded to the commission for it to determine whether Parr met the requirements of R.C. 4123.58(G) under the proper legal standard. *See State ex rel. Ryan Alternative Staffing, Inc. v. Moss*, 2021-Ohio-3539, ¶ 21 (issuing limited writ ordering the commission to "reconsider this case under the proper standard, as articulated in this opinion").

{¶ 76} The commission nevertheless asserts Parr is not entitled to relief in mandamus because he failed to set forth evidence demonstrating new and changed circumstances. The Supreme Court of Ohio recently addressed R.C. 4123.58(G) in *Prinkey*,

2024-Ohio-5713. In that case, the claimant, Prinkey, filed an initial application for permanent total disability compensation that was supported by the opinions of a physician and a psychologist. After the application was submitted, the commission referred Prinkey for examinations conducted by specialists selected by the commission. Prinkey's physician found Prinkey to be permanently and totally disabled, while the commission's physician found Prinkey had a 30-percent whole-person impairment and was capable of sedentary work with restrictions. Prinkey's psychologist opined that Prinkey's psychological condition resulted in a 25 percent disability and found Prinkey to be permanently and totally disabled. The commission's psychologist opined Prinkey had a 3 percent impairment and was capable of working. Relying on reports from the commission's specialists to find Prinkey was medically capable of performing some sustained remunerative employment at the sedentary level, a commission staff hearing officer denied Prinkey's initial request for permanent total disability compensation.

{¶ 77} Less than two years after the initial application was denied, Prinkey filed a second application for permanent total disability compensation supported by reports from the same medical doctor and psychologist who had supported his initial application. Prinkey was examined by two new specialists at the commission's request. The opinions of the physicians did not markedly differ from the initial application. However, the two psychologists submitted opinions "with noted differences from the earlier conclusions regarding Prinkey's first application." *Prinkey*, 2024-Ohio-5713, at ¶ 7. For example, Prinkey's psychologist increased his percentage of whole-person impairment resulting from his psychological condition to 30 percent from 25 percent, again finding him permanently and totally disabled. Additionally, the commission's psychologist found Prinkey was incapable of work with a 35 percent whole-person impairment from his psychological condition, up from the 3 percent set by the commission's first psychologist. Despite these changes, a commission staff hearing officer found Prinkey failed to present evidence of new and changed circumstances as required by R.C. 4123.58(G) to permit the commission to adjudicate Prinkey's second request for permanent total disability compensation.

{¶ 78} Thereafter, Prinkey filed a mandamus action challenging the denial of his second application for permanent total disability compensation. This court granted a

limited writ returning the matter to the commission because the staff hearing officer failed to support the decision with evidence and reasoning as required by *Noll*, 57 Ohio St.3d 203.

{¶ 79} On appeal, the Supreme Court of Ohio examined R.C. 4123.58(G), noting that while the "phrase 'new and changed circumstances' is not defined under the statute," this same phrase "does have application elsewhere in workers' compensation law." *Prinkey*, 2024-Ohio-5713, at ¶ 21. The Court stated that "[b]ecause workers' compensation cases are largely fact-specific, what constitutes 'new and changed circumstances' is determined on a case-by-case basis." *Id*. at ¶ 22. Recalling the frequently repeated maxim that the commission is the sole evaluator of the weight and credibility of submitted evidence, the Court stated that the commission is "free to find that a medical report submitted with a subsequent application for [permanent total disability] compensation is not credible evidence of new and changed circumstances." *Id*. at ¶ 24. Importantly, however, the Court found that the staff hearing officer made no such finding with regard to the materials submitted in support of Prinkey's second application. The Court found the staff hearing officer "failed to provide any reasoning why the medical reports Prinkey submitted are not evidence of new and changed circumstances" and, moreover, "failed to cite the evidence on which it *relied* in reaching its decision, instead mentioning all the evidence it *considered*— namely, the previous [staff hearing officer's] order and the State's claim file." (Emphasis in original.) *Id*. The Court found that "[g]iven that the psychologists' reports in the claim file document a worsening of Prinkey's allowed conditions," the staff hearing officer "could not have relied on the *entire* claim file in concluding that Prinkey failed to present *any* evidence of new and changed circumstances." (Emphasis in original.) *Id*. As a result, the Court affirmed, agreeing that the staff hearing officer's order failed to satisfy the requirements of *Noll*.

{¶ 80} The staff hearing officer's order at issue in this matter bears substantial similarities to the order found to be deficient in *Prinkey*. Here, as in *Prinkey*, there were marked changes in the opinions of the commission's specialists regarding Parr's impairment and residual functional capacity between the first and second application. For the first application for permanent total disability compensation, Dr. Finnerty found with regard to only the allowed psychological condition that Parr had a whole person impairment of 30 percent and was capable of work with the limitation that he could "sustain

a static set of tasks without fast pace or frequent changes which may exacerbate maladaptive responses to stress" and "interact with others superficially." (Stip. at 56.) With regard to the allowed physical conditions, Dr. Onamusi indicated Parr had a whole person impairment of 38 percent and was capable of sedentary work with restrictions of "[n]o bending, squatting." *Id.* at 34. The commission referred Parr to different specialists in response to his second application for permanent total disability compensation. With regard to the allowed psychological condition, Dr. Scott found Parr had a whole person impairment of 40 percent—an increase of 10 percent from the last commission specialist— and was now incapable of work. With regard to the physical conditions, Dr. Becker found Parr had a whole person impairment of 52 percent—an increase of 14 percent—and was capable of only part-time employment, 4 hours a day, 5 days per week.

{¶ 81} Parr argues the staff hearing officer failed to address the medical reports— including the reports of the commission's own specialists—that were before the commission at the time of his second application. Parr, through counsel, specifically raised these reports as evidence of new and changed circumstances before the staff hearing officer at the June 13, 2024 hearing. Though the staff hearing officer's order addressed some of Parr's arguments, in addition to a number of factors that Parr did not raise in support of a finding of new and changed circumstances, the staff hearing officer did not address the reports of the commission's specialists, Dr. Scott and Dr. Becker, that were issued in response to Parr's second application for permanent total disability compensation.[4]

{¶ 82} The commission, in its role as the sole evaluator of the weight and credibility of submitted evidence, may find that a medical report submitted with a subsequent application for permanent total disability compensation is not evidence of new and changed circumstances. However, just like in *Prinkey*, the commission did not make such a finding in this case. The staff hearing officer "failed to provide any reasoning why the medical reports [Parr] submitted are not evidence of new and changed circumstances." *Prinkey* at ¶ 24. It is noted that the Supreme Court of Ohio reached its conclusion in *Prinkey* based in

---

[4] The commission, in its statement of the case and facts, mentions the reports of Dr. Scott and Dr. Becker, and recognizes that Parr "argued his new and changed circumstances included . . . the new specialists for the commission [who] indicate[d] a significant change in Parr's medical impairments." (Commission's Brief at 8-9.) However, the commission does not specifically address these reports or Parr's arguments regarding the same in explaining why it believes the staff hearing officer's order was not an abuse of discretion.

part on the fact that the "**psychologists' reports** in the claim file document a worsening of Prinkey's allowed conditions." (Emphasis added.) *Prinkey*, 2024-Ohio-5713, at ¶ 24. By referring to the findings in the—plural—psychologists' reports, the Court included in its analysis of R.C. 4123.58(G) the report of the commission's own psychologist in that case, a report that was not produced until after Prinkey had filed the subsequent application for permanent total disability compensation.

{¶ 83} Additionally, as in *Prinkey*, the staff hearing officer "failed to cite the evidence on which it *relied* in reaching its decision, instead mentioning all the evidence it *considered*" by stating that all evidence was reviewed and considered. (Emphasis in original.) *Id.* On this point, the commission states: "The [staff hearing officer] concluded Parr did not submit persuasive evidence of new and changed circumstances based on R.C. 4123.58(G), and *Parrish*, 2024-Ohio-1135 (10th Dist.). . . . Thus, the [staff hearing officer] cited to the evidence supporting his decision." (Commission's Brief at 18.) While R.C. 4123.58(G) and this court's decision in *Parrish* are authorities that could be cited in support of the commission's reasoning, neither is **evidence** in the record upon which the commission could rely. Given that the commission's specialists for the second application reported greater percentages of impairment and increased restrictions on Parr's ability to work—including the commission's psychological specialist, who found Parr to be incapable of work—than those at the time of the first application, the staff hearing officer "could not have relied on the *entire* claim file in concluding that [Parr] failed to present *any* evidence of new and changed circumstances." (Emphasis in original.) *Prinkey* at ¶ 24. *See State ex rel. Donohoe v. Indus. Comm.*, 2011-Ohio-5798, ¶ 17 (noting that this court acknowledged that the staff hearing officer's order in that case "contained the boilerplate 'all evidence was reviewed and considered,' " though "other language in the order cast doubt on the true extent of evidentiary review").

{¶ 84} Next, the commission asserts that "an award of [permanent partial disability] compensation does not constitute new and changed circumstances for later [permanent total disability] consideration." (Commission's Brief at 17.) The commission provides no authority directly supporting this assertion, but instead points to the purpose of a permanent partial disability award in arguing that it cannot serve as evidence of new and changed circumstances. *See State ex rel. Kincaid v. Allen Refractories Co.*, 2006-Ohio-

2195, ¶ 14 (10th Dist.) (stating that a permanent partial disability award is "akin to a damage award").

{¶ 85} As discussed above, in order for an application for an increase in percentage of permanent partial disability to be considered, R.C. 4123.57(A) requires a claimant to demonstrate "substantial evidence of new and changed circumstances" developing since the original award. It therefore follows that an order of the commission granting an increase in permanent partial disability was based on substantial evidence of new and changed circumstances. The commission does not explain how the substantial evidence of new and changed circumstances, which would be required for an increase in percentage of permanent partial disability and were added to the record after the denial of an initial permanent total disability application, could not *also* be presented to show new and changed circumstances for a subsequent application for permanent total disability compensation.

{¶ 86} The commission's position is also not supported by the provisions of the Administrative Code applying to permanent total disability. Adm.Code 4121-3-34(D)(3) addresses "[f]actors considered in the adjudication of all applications for compensation for permanent total disability." Within this subsection, Adm.Code 4121-3-34(D)(3)(f) provides that "[t]he adjudicator shall not consider the injured worker's percentage of permanent partial impairment as the sole basis for adjudicating an application for compensation for permanent total disability." Thus, when the commission has jurisdiction to adjudicate an application for permanent total disability compensation, it may not use the percentage of permanent partial impairment as the **sole basis** for resolving the issue of permanent total disability. But this does not mean that it cannot be **a basis** for the commission's determination. Though these provisions apply to the adjudication of an application for permanent total disability compensation, there is no limitation on the commission's consideration of percentages of permanent partial disability in determining whether new and changed circumstances exist under R.C. 4123.58(G), which must be met "before the industrial commission may consider a subsequent application."

{¶ 87} Furthermore, increases in percentages of permanent partial disability can reflect the worsening or change of condition subsequent to the initial award. *See State ex rel. Hupcej v. Indus. Comm.*, 2024-Ohio-5920, ¶ 30 (10th Dist.) (adopting magistrate's

decision finding that "[e]stablishing new and changed circumstances" for an application for an increase in a permanent partial disability award under R.C. 4123.57(A) "entails demonstrating that conditions have changed subsequent to the initial award" (Internal citations and quotations omitted.)); *State ex rel. DaimlerChrysler Corp. v. Majerowski*, 2006-Ohio-6428, ¶ 9 (10th Dist.) (finding that an initial permanent partial disability award granted after the denial of an initial permanent total disability claim did not reflect an increase of an already existing permanent partial disability award, and, therefore, did "not reflect a worsening" of the allowed condition). From this, the magistrate rejects the commission's assertion that increases in percentages of permanent partial disability cannot, as a matter of law, serve as evidence of new and changed circumstances for purposes of R.C. 4123.58(G).[5]

{¶ 88} Finally, while not determinative of this matter since it must be remanded to the commission to make findings under the proper legal standard, the magistrate notes that the burden under the plain text of R.C. 4123.58(G) is not a particularly demanding one. As the comparison with the text of R.C. 4123.57 makes clear, R.C. 4123.58(G) does not require that the evidence of new and changed circumstances meet a heightened standard, for example by requiring that such evidence be "meaningful" or "substantial," in order for the commission to consider a subsequent application. Nor does the statute require that the evidence presented meet a particular or heightened burden of proof. *Compare, e.g.*, Adm.Code 4121-3-34 ("The burden of proof shall be on the injured worker to establish a case of permanent total disability. The burden of proof is by preponderance of the evidence."). Rather, R.C. 4123.58(G) only requires the claimant to "**present evidence** of new and changed circumstances." (Emphasis added.) *See Parrish* at ¶ 9 (stating that R.C. 4123.58(G) "requir[es] only that the claimant make an initial showing sufficient for the commission to consider the subsequent [permanent total disability] application"). Importantly, the initial showing required under R.C. 4123.58(G) does not alter the analysis of whether a claimant has established entitlement to permanent total disability. *See id.* (stating that R.C. 4123.58(G) "does not foreclose a claimant's ability to make a subsequent application for [permanent total disability], impact the analysis of the merits of the

---

[5] The magistrate expressly makes no finding regarding whether the evidence of increases in percentage of permanent partial disability establishes new and changed circumstances under R.C. 4123.58(G) in this case, as such question must be resolved by the commission in the first instance under the proper legal standard.

[permanent total disability] application, or change the burden, nature, or quantum of proof a claimant must demonstrate to be entitled to [permanent total disability] compensation").

## D. Conclusion

{¶ 89} In conclusion, the determination of whether a claimant has met the requirements of R.C. 4123.58(G) is a matter for the commission, as the exclusive evaluator finder of fact in workers compensation matters, to make in the first instance. *See generally State ex rel. Navistar, Inc. v. Indus. Comm. of Ohio*, 160 Ohio St.3d 7, 2020-Ohio-712, ¶ 21. However, in making this determination, the commission may not apply an incorrect legal standard. *See Ripke*, 129 Ohio St. 649, at paragraph one of the syllabus. As the commission has applied an incorrect legal standard in its analysis of whether Parr has met the requirements of R.C. 4123.58(G), this matter must return to the commission for further proceedings. *See generally Ryan Alternative Staffing*, 2021-Ohio-3539, ¶ 21. Accordingly, it is the decision and recommendation of the magistrate that this court should grant a limited writ returning this matter to the commission for further proceedings in accordance with law and this decision.

/S/ MAGISTRATE
JOSEPH E. WENGER IV

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b). A party may file written objections to the magistrate's decision within fourteen days of the filing of the decision.